# THE DISTRICT OF COLUMBIA

*v.*

# GRAY.

EVIDENCE ; ACT OF GOD ; PRACTICE ; INSTRUCTIONS TO JURY.

1. In an action against a municipality for damages sustained in conse-
quence of the overflow of plaintiff's premises by water from a
sewer, it was *held* that it was error on the part of the trial court
to refuse instructions to the jury offered by the defendant, to
the effect that if the jury should find that the storm which
caused the overflow was a providential visitation or act of God,
their verdict should be for the defendant, where there was evi-
dence in the case tending to show that such was the fact, and
the subject matter of the instructions was not covered in the
court's charge, nor in any of the other instructions given the
jury.

2. A trial judge is not bound to grant instructions to the jury in the
precise terms in which they are asked ; but where a prayer for
instruction is presented, which is sound in law and applicable to
the testimony in the case, it is error for him not to instruct the
jury in some sufficient form, specifically, and not by vague gen-
eralities, upon the precise point to which the instruction is
directed, if it is a material point in the case.

No. 102.   Submitted October 12, 1893.—Decided December 4, 1893.

HEARING on an appeal by the defendant from an order of
the Supreme Court of the District of Columbia, holding a
law term, overruling a motion for a new trial on bills of ex-
ception and case, in an action for damages. *Reversed.*

THE COURT in its opinion stated the case as follows :

This is a suit at common law against the District of Co-
lumbia for damages claimed by the plaintiff, Edwin N.
Gray, to have been sustained by him in consequence of the
overflow of his premises by water from a sewer which is
alleged to have been negligently permitted by the defendant
to have become obstructed by sand and other matter to
such an extent as to become incapable of carrying off the
water in safety.

Two very heavy rainfalls occurred in the city of Washing-
ton on July 1, and August 1, 1889, which resulted in an

overflow from some of the sewers and an inundation of the
low grounds where the plaintiff's property was situated,
causing much damage to the plaintiff and others. The
plaintiff claimed that, although the rainfall on both of the
days mentioned was extraordinary and unusual, the over-
flow was caused by the obstruction of the sewers in conse-
quence of accumulations of sand and other matter negli-
gently permitted by the municipal authorities to remain
therein when it was their duty to remove them; and testi-
mony was adduced on his part to show that the obstructions
were of such a character as to render the sewers incapable
of performing the functions for which they had been con-
structed, and that the damage would not have occurred if it
had not been for these obstructions. On the other hand,
the defendant's contention was that there were no such ob-
structions as were claimed by the plaintiff to exist; that
there had been repeated inspection of the sewers by the
agents of the District; and that, under any circumstances,
with or without such obstructions as were claimed to exist,
the rainfall was so extraordinary as that the defendant
could not have guarded against it by the exercise of any
ordinary care or the adoption of any ordinary prudential
measures. In other words, it was claimed by the defendant
that the rainfall was a providential visitation, or act of God,
as it is called; and that the sewers were incapable in any
event of carrying off the immense volume of water that
poured into them on that occasion. And there was testi-
mony tending to prove the truth of this contention, mainly
that of two engineers, Lusk and McComb, who are or were
in the employment of the defendant.

At the trial of the cause, upon the conclusion of the tes-
timony, instructions to the jury were requested by both
parties; and the court also charged the jury of its own mo-
tion. The instructions given on behalf of the plaintiff were
substantially to the effect that, if the jury found from the
evidence that the water would have been safely carried off,
had it not been for the obstruction of the sewers claimed by

the plaintiff to have been proved by him and to have been occasioned by the negligence of the defendant, the plaintiff was entitled to recover, even though the damage might have been the combined result of the obstruction and of the extraordinary rainfall.

On the part of the defendant, eleven instructions were asked, of which four were given, two were given with a qualification, and five were refused. The instructions that were given had reference partly to the question whether there were at the time of the disaster any such obstructions as were claimed by the plaintiff to exist in the sewers, and partly to the theory that the defendant should not be held responsible for any error of judgment in its officers with regard to the capacity of the sewers and the method of their construction. The five instructions that were refused were as follows:

" 1. The jury are instructed that upon the whole evidence in this case the defendant is not liable, and their verdict should be for the defendant.

" 2. The term ' act of God,' means in law such inevitable accident as cannot be prevented by human care, skill and foresight, but results from natural causes, such as lightning, tempests, floods and inundation. If, therefore, the jury believe from the evidence that the act of God was the immediate and sole cause of the damage complained of, then the defendant is not liable, and your verdict should be for the defendant.

" 5. While it is the duty of the defendant in constructing its sewers, to take into consideration not only the ordinary and usual quantity of water in ordinary times, but also the liability of freshets occasionally occurring; still, if the defendant did so provide, and an unusual and extraordinary storm occurred, whereby the plaintiff's premises and the immediate neighborhood around was flooded and overflowed, and which by the exercise of ordinary prudence, could not be provided for and guarded against, and the damage complained of occurred by reason of such disastrous storm, then the defendant would not be liable.

" 10. If the jury believe from the evidence that the Tiber sewer, even if free and clear of all sand and deposits, was not of sufficient size and capacity to discharge the volume of rainwater which drained into it on July 1, 1889, without backing up on the premises of the plaintiff as alleged, then the plaintiff cannot recover and your verdict should be for the defendant.

" 11. If the jury believe that the rainstorm of July 1, 1889, spoken of in the evidence in this case, taxed the Tiber sewer beyond its maximum capacity, and that the plaintiff's premises would have been flooded irrespective of the question whether there was an accumulation of sand in the sewer, if there was any such accumulation, then the plaintiff would not be entitled to recover in this action, and their verdict should be for the defendant."

There was a verdict for the plaintiff, and the defendant appealed.

*Mr. S. T. Thomas* and *Mr. Andrew B. Duvall* for the District of Columbia, plaintiff in error (*Mr. George C. Hazelton* was with them on the brief):

1. The *gravamen* of the complaint is that the defendant wrongfully, negligently and injuriously suffered and permitted the sewer to choke up with sand, gravel, filth, excrement and water. Negligence, the only basis upon which the action could rest, was not shown. There is no claim that Tiber sewer, as originally constructed, was not of adequate capacity to perform the functions it was designed for, nor is there any averment in the declaration, or any evidence of notice to the defendant, that the sewer was obstructed, or of neglect on the part of the defendant after notice to redress the evil if it existed. It is well-settled law in this District that if a sewer when originally constructed be of adequate capacity, but subsequently becomes obstructed, whereby damage ensues, no liability thereby attaches to the municipality except after notice and neglect to remove the obstruction. *Bannagan* v. *The District*, 2

Mackey, 285. The fact of obstruction was not alone enough to charge the defendant with negligence. *Griffin* v. *New York*, 9 N. Y., 456; *Todd* v. *Troy*, 61 N. Y., 506; *Stanton* v. *Springfield*, 12 Allen, 566. Notice, actual or constructive, must be alleged in the declaration. *Noble* v. *Richmond*, 31 Gratt. (Va.), 271.

2. The court erred in refusing to grant the defendant's second prayer. The defendant was not liable if the immediate and sole cause of the damage complained of was the act of God. There was evidence that great floods and inundations occurred on July 1 and August 1, 1889—something in opposition to the act of man. The effect of refusing this prayer was to tell the jury that the defendant was liable for injuries resulting to him from the plan of the sewer. The defendant is plainly not liable for insufficiency in the plans of its sewers. Dill. on Munic. Corp., 1046, 1051; *Bannagan* v. *District*, 2 Mackey, 285; *Johnston* v. *District*, 118 U. S., 19. See also, *B. & O. R. R. Co.* v. *Sulphur Sp. School Dist.*, 96 Pa. St., p. 68; *Jansen* v. *Atchison*, 16 Kansas, 375; *Dewey* v. *Detroit*, 15 Mich., 313; *R. R. Co.* v. *Reeves*, 10 Wall., 190; *Smith* v. *Mayor*, 66 N. Y., 296.

*Messrs. Shellabarger & Wilson* and *Mr. Randall Hagner* for the defendant in error.

Mr. Justice Morris delivered the opinion of the Court:

The first of the instructions set forth in the statement of the case need not be considered at this time. Those numbered ten and eleven were properly refused, for the reason, if for no other, that they restrict the right of recovery to the flood of July 1, 1889, when the claim of the plaintiff was for damages both from that flood and from the flood of August 1, 1889, and there was testimony tending to show loss by both floods, and negligence of the defendant in regard to both, although it is undoubtedly true that the testimony on both sides was mainly directed to the circumstances of the flood of July 1. But a more serious question arises in regard to the rejected instructions numbered two and five.

While the defense struggled resolutely to disprove the existence of any obstructions in the sewers at the time of the storm, its main contention was that the disaster was a providential visitation, or "act of God," against which the defendant could not have guarded by the exercise of any ordinary prudence and care; and there was testimony strongly tending to support this theory. It is conceded that the rainfall was an extraordinary and most unusual one; and it is apparent also that it came about the time of high tide, when it was most liable to cause an overflow. Undoubtedly, therefore, the defendant was entitled to an instruction on this head; and the instructions numbered two and five, requested on its behalf, seem to be unobjectionable under the circumstances of this case. Consequently, we must regard it as an error on the part of the court to have refused to give these instructions, unless it appears that it has in some way covered the subject matter of them in its charge or in some of the other instructions which were actually given to the jury.

Among the instructions given on behalf of the defendant was one, which is numbered four in the record, to the effect that, if the capacity of the sewer was not sufficient to carry off the rainwater which fell on the two occasions referred to in the declaration, and this was the cause of the injury, and not any obstruction of sand or gravel, the plaintiff should not recover. And there was also an instruction requested by the defendant and granted, which is numbered nine in the record, to the effect that, if the cause of the overflow was the sudden and extraordinary rainstorms that occurred on the days specified, and was not caused or contributed to by any accumulation, if such there was, of sand or gravel in the sewers, the plaintiff was not entitled to recover. But the first of these two instructions plainly has reference only to the matter of the normal capacity of the sewers, and the rule that, in such an action as the present, the municipal authorities should not be held responsible for errors of judgment; and the other, when carefully analyzed, will be

seen to be no more than an instruction to the effect that, if the damage was caused by the storm and not by any alleged obstruction, the plaintiff was not entitled to recover. Neither one of these instructions touches the question of a providential visitation. And nowhere else in the record, either in any of the instructions given on behalf of either side, or in the judge's charge to the jury, do we find that the attention of the jury is in any manner directed to the question.

It is very true that, in one part of his charge, the judge says: " If this injury was caused by the faulty construction of the sewer, or by its want of capacity, or was caused in any other way in the world except by the sewer being obstructed, the plaintiff has got no case and cannot recover." And it might be assumed that this very general and sweeping expression, " or was caused in any other way in the world except by the sewer being obstructed," is sufficient to cover the case of a providential visitation or any other possible case. And so probably in one sense it is. But vague generalities addressed to a jury cannot supply the place of specific instructions. The very purpose of instructions is to direct the attention of the jury specifically to the matters relied on by the parties, and to remove the subject of controversy from the domain of vague generality. *Thorwegan v. King*, 111 U. S., 549; *United States v. Bank of the Metropolis*, 15 Pet., 377.

Of course, the judge was not bound to give the instructions requested by the defendant in the precise terms in which they were requested. But when a prayer for instructions is presented to a trial judge, and the prayer itself is sound in law and applicable to the testimony in the case, it is error in him not to instruct the jury in some sufficient form specifically, and not by vague generalities, upon the precise point to which the instruction is directed, if it is a material point in the case. This was not done in the present instance; and we must regard the failure to do so as error.

Several other questions are raised by the record, which it does not seem to be necessary for us to determine at this

time; and it is possible that some of them at least may not re-appear in a new trial.

For the reasons indicated we must reverse the judgment of the court below, with costs; and remand the cause with instructions to set aside the verdict, and to award a new trial.

*Reversed.*