[No. 681.   September 1, 1896.]

TERRITORY OF NEW MEXICO, APPELLEE, v, JOSE PADILLA, APPELLANT.

CRIMINAL LAW—MURDER—CIRCUMSTANTIAL EVIDENCE—INSTRUCTION.—
In a murder case, where there was no eyewitness to the killing, and death was shown to be the result of a gunshot wound, and there was no evidence to show that the murder was by poison or torture, and no circumstances showing necessarily that it was done by lying in wait, or that it was perpetrated in committing, or attempting to commit, a felony,—Held: That the failure of the court to instruct the jury in other than the first degree, was reversible error, as held by this court in Aguilar v. Territory, 8 N. M. 496.

ID.—MURDER—EVIDENCE—DEGREE OF MURDER—JURY QUESTION.—In such case, where the evidence was that deceased and defendant were neighbors in a small village, and partners in business; that they were on unfriendly terms; that deceased was seen to go up a prairie trail, followed by defendant carrying a gun; that soon afterward a shot was heard, and in a short time defendant was seen returning with a gun, walking as if he wished to escape observation; that

deceased was found dead from a gunshot; that a shell was found shown to be made for a gun not in general use, which kind of gun was found concealed in defendant's house,—Held: That under such circumstances the question as to the degree of murder was for the jury.

ID.—SANITY OF WITNESS—REQUEST FOR INSTRUCTION.—Where the testimony of a witness, whose sanity is attacked, is important, a special request for an instruction, as to his sanity or insanity, should be granted, though the testimony in the attack made be slight.

ID.—SANITY OF WITNESS—TESTIMONY OF NONEXPERT—COMPETENCY.— Where the sanity of a witness is attacked, a nonexpert witness may be asked as to the demeanor of the witness on a certain occasion or under certain circumstances, for the purpose of placing before the jury the facts from which the degree of mental capacity of the witness may be inferred, but not questions directly calling for an opinion as to his sanity or insanity, nor questions as to his general reputation in that regard.

APPEAL, from a judgment of the Fourth Judicial District Court, San Miguel County, convicting defendant of murder in the first degree. Reversed and remanded; BANTZ and HAMILTON, JJ., concurring in result, LAUGHLIN, J., dissenting.

L. C. FORT and O. A. LARRAZOLO for appellant.

The failure of the court to instruct the jury, as requested by defendant, as to the testimony of the witness, Ortega, who testified he did not understand what an oath was or its nature, was reversible error.

The admission of the shell in evidence was material error, for the reason that it was not shown to be the same shell that was found. It devolved upon the prosecution to prove every material fact or circumstance tending to show defendant's connection with the crime charged. 1 Greenlf. Ev. [13 Ed.], sec. 74; Whar. Crim. Ev. [8 Ed.], secs. 319, 320. See, also, 1 Greenlf. Ev. [13 Ed.], sec. 82; 1 Black, Com. Book 3, 371; Burr on Cir. Ev. 730; Porter v. State, 1 Tex. App. 396; Williams v. East India Co., 3 East, 192; 1 Phil. Ev. [4 Am. Ed.] 635; Comm. v. Carter, 11 Pick. 277; U. S. v. Reyburn, 6 Pet. 366; Wilson v.

State, 12 Tex. App. 487; 1 Greenlf. Ev. [13 Ed.], sec. 99; Whar. Crim. Ev., secs. 220, 221; 9 Am. and Eng. Ency. Law, 325, and citations.

The court erred in admitting, over defendant's objections, the testimony of Wooster as to the experiments made by him with the gun, in the absence and without the knowledge of defendant. 1 Stark. Ev. 52; 2 Bouv. Law Dic. "Res inter alios acta," p. 467; 3 Stark. Ev. 1300; Byrd v. State, 26 Tex. App. 385; Bookeser v. State, Id. 595; Chew v. State, 23 Id. 237; Haines v. State, Id. 568; Chunely v. State, 20 Id. 557; Thomas v. State, 18 Id. 223.

The court also erred in admitting the testimony of the witness as to the mental operations of the witness Ortega. Whar. Crim. Ev. 456; Zantzinger v. Weightman, 2 Cranch, C. C. 478; Whitman v. Freeze, 23 Me. 185; Shepard v. Willis, 19 Ohio, 142; Gilman v. Riopelle, 18 Mich. 145; State v. Garvey, 11 Minn. 154; Hudgins v. State, 2 Ga. 173; Hawkins v. State, 25 Id. 207; Clement v. Cureton, 36 Ala. 120. See, also, Whar. Crim. Ev., secs. 458, 460, 417, and citations.

It is the duty of the court to instruct the jury as to all the law upon each and every issue raised in the particular case. Comp. Laws 1884, sec. 1054; Laws N. M. 1891, ch. 80; 1 Whar. Crim. Prac., sec. 709; State v. McDonnell, 22 Vt. 491; People v. Rego, 43 Hun. 127; Longnecker v. State, 22 Ind. 247; State v. Braintree, 25 Iowa, 572; State v. Mesheke, 51 Id. 308; People v. Dunn, 1 Idaho, 75; Strady v. State, 5 Cold. 300; Soney v. State, 13 Lea. 472; State v. Hendricks, 32 Kan. 559; Hirsch v. State, 25 Ga. 399; Woodbury v. State, 69 Ala. 12; State v. Mitchell, 64 Mo. 191.

The presumption of the innocence of the accused, until proven guilty, beyond a reasonable doubt, is a legal right to which he is entitled absolutely, and not

by reason of any gracious humanity of the law, as charged by the court.    Whar. Crim. Ev. [8 Ed.], pp. 1, 718.

JOHN P. VICTORY, solicitor general, for the territory.

The sheriff and justice Wooster were just as competent to find out if the rifle of defendant had been fired within a recent period as any expert.    It was offered as a part of the res gestae.    People v. Manks, 78 N. Y. 611; Myers v. State, 14 Tex. App. 35; State v. Jones, 41 Kan. 309; 2 Bish. Crim. Proc., sec. 631, subdiv. 7.

In murder cases, others than experts may give their opinions as to the sanity or insanity of a defendant, provided such opinions are accompanied with statements of the facts upon which they are based.    In this case is an attempt to prove the insanity of a witness, and not of the defendant.    Choras v. State, 31 Ga. 424; 1 Thomp. on Trs., sec. 379.    It is for the jury, and not for witnesses, to draw inferences from facts.    Morehouse v. Mathews, 2 N. Y. 574; Bank v. Isham, 48 Vt. 590; Tomlin v. Hilyard, 43 Ill. 300.

Section 2055, Compiled Laws 1884, embraces a part of our civil procedure, and has no application to criminal cases.    Territory v. Franklin, 2 N. M. 307; Territory v. Romine, Id. 114; Faulkner v. Territory, 6 N. M. 464; Trujillo v. Territory, 7 Id. 44.

COLLIER, J.—The appellant, Jose Padilla, was convicted of murder in the first degree in the district court of the county of San Miguel.    Motions for new trial and in arrest of judgment being overruled, appellant was sentenced to death; and from this judgment this case is here on appeal, a bill of exceptions being duly allowed.

The evidence to connect the appellant with the killing of one Juan Garcia y Martinez is purely cir-

cumstantial. There was no eyewitness to the killing itself, and death was shown to be the result of a gunshot wound inflicted upon the left side of the body of deceased. There being no evidence whatever to show that this was murder by poison or torture, and there being no circumstances showing necessarily that it was done by lying in wait, or that it was perpetrated in committing, or attempting to commit a felony, the case is controlled by that of Territory v. Aguilar, in which the opinion is this day rendered by this court; and it must, therefore, be reversed and remanded for a new trial, because of the failure of the court to instruct the jury in other than the first degree. Territory v. Friday, 8 N. M. 204, and other cases there cited.

*MURDER: circumstantial evidence: instruction.*

In this case it was shown that the deceased and defendant were neighbors in a small village; were partners in the ownership of a mill, which had lain idle several months because of disagreements in business; were unfriendly and scarcely spoke when the met. Their houses were three or four hundred yards apart. A trail led over the hills to the prairie, which was in full view of both houses. Early in the afternoon of the day of his death, deceased went up that trail to the prairie to look for his horses, and about sundown was found dead on the prairie, about eight or nine hundred yards from his house, with a bullet hole in his left side. A witness, by name Ortega, saw the deceased when he went up the trail. Not long afterward he saw defendant go up the same trail, carrying a gun. He heard a shot, and in a short time defendant came down the trail, still having his gun, and walking in a way as if he wished to escape observation. There was other testimony showing that an empty cartridge shell was found the next morning, with dirt on it, as if it had lain out and been spattered

*MURDER: evidence: degree of murder: jury question.*

by the rain the night before.  This shell was shown to be made for a gun not in very general use, called a "Henry rifle," and defendant had this kind of gun at his house.  When it was asked for by the sheriff, two days after the homicide, his wife took it from between mattresses in the inner room.  The place where the body was found was in full view of persons on the prairie, but hidden from the little village, which was under the hills.  This was, in effect, the entire case of the prosecution, to which the defendant set up and sought to prove an alibi by persons testifying that he remained at the house the entire afternoon of the day.  He sought also to prove that the kind of shell found near the body was of a kind kept in stock in Las Vegas, and that it fitted and was used in another class of gun than the Henry rifle.  As a reason for keeping the gun between the mattresses, it was testified that there was a small child around the house, and it was safer to keep the gun in that place.  Also the credibility of the witness Ortega was sought to be attacked by evidence showing that he was mentally unsound.  It should be said that it was also shown by the prosecution—or, rather, circumstances were put in evidence which the prosecution claimed showed—that the defendant's gun had at the time of the inquest been recently discharged.

By the instruction of murder in the first degree alone, the court must have assumed, which the defendant denied, that there was hostility existing between him and the deceased, that when he left, following on the trail deceased had just taken, he did it from a premeditated design to take the life of deceased; and that, at all events, when the killing actually took place it was not in the heat of passion, or in other ways, so as to make the offense of a lower degree, or even justifiable or excusable homicide.  It was for the jury to say whether there was a motive existing in defendant's

mind which would make him seek the life of deceased.
It was also for the jury to say whether the defendant,
in following the trail deceased had taken shortly
before, was pursuing deceased with the intention of
killing him, or if his doing so was merely·a coinci-
dence. If they had disbelieved the testimony as to
motive, they might also have reached the conclusion
that defendant was not pursuing deceased for the pur-
pose of killing him. It was for the jury to judge of the
credibility of the witnesses as to these matters, and
then, having done that, to say what weight should be
given to the circumstance that defendant had, with a
gun in his hand, gone up the same trail which the
deceased had taken. Surely, if the jury had discarded
the evidence as to motive, it would have been no great
step for them to have reached the conclusion that the
prosecution had not established beyond a· reasonable
doubt the ingredients which make a case of murder in
the first degree.

We·go further, however, and say that, admitting
the motive to have been proven, that defendant saw
the deceased go up the trail, and followed after him
with a gun, with a deliberate and premeditated design
unlawfully and maliciously to effect his death,—yet,
with no eyewitness of the homicide, it is not neces-
sarily shown that it was so accomplished. It is not
the intent of the mind that the law regards as criminal,
but it is the overt act flowing from that intent. There
is no question but that a verdict of murder in the first
degree would be supported by the evidence that
defendant was hostile to deceased, that he followed
after him with a gun, that a shot was heard, and the
deceased was killed from the effect of a bullet in his
body, as there would be circumstances tending to
show deliberation and premeditation; but, before
arriving at such a verdict, it was necessary for the
jury to believe beyond a reasonable doubt that no

sudden quarrel arose, and that deceased was killed in the heat of passion, without design to effect death, or that defendant did not kill deceased in any other of the ways constituting murder in the second degree, and that it was not done by the culpable negligence of defendant, and that it was not done under such circumstances as constitute excusable or justifiable homicide, as defined by the first paragraph of section 692 and section 693, Compiled Laws, New Mexico, 1884.

We have said this much as to this homicide, not as desiring again to go over this matter, so exhaustively discussed, as the writer believes, in the opinion of Justice HAMILTON in Territory v. Aguilar, supra, but only because this case differs from that, in that the kind of weapon used there, and the way death was effected, precluded the idea of death by culpable negligence, or by accident or misfortune, as described in section 693, supra. The cardinal distinction between all homicides not shown by eyewitnesses, and homicides where the killing is shown by eyewitnesses, is that as to the former class the jury must weigh the circumstances, and determine what degree of murder is proven, while as to the latter the court may instruct the jury as to a single degree, or two degrees, or all the degrees, as, or not, the evidence may be applicable to one or more degrees. If the secret killing were shown to be by poison or torture, or necessarily in the commission of, or attempt to commit, a felony, or by lying in wait, then, also, even in cases of circumstantial evidence, the court may restrict instructions to first degree. If the rule were that every secret homicide presumes murder in the first degree, then the slayer of a man whose body is found pierced by bullets, having in its hand a weapon recently discharged, is placed in the same category as he who has slain unseen a defenseless woman, whose polluted corpse bears evidence of the

utmost atrocity. Such a rule is not reconcilable with reason, of which law should be the perfection; and the only escape from it is for the jury, and not the judge, to weigh all the circumstances which may satisfy their minds as to how the secret killing may have been effected, and determine the degree of the slayer's guilt.

As this case goes back for new trial, we consider it well to notice one or two of the other assignments pressed upon us.

It is complained that the trial judge failed to give a requested instruction as to circumstantial evidence. There was an instruction as to this in the charge of the court, but in our opinion the plaintiff in error was entitled to have had more distinctly stated to the jury, than was done in the court's own instruction, the request made, which is as follows: "In a case of circumstantial evidence, the evidence against the accused must be such as to exclude, beyond a reasonable doubt, every hypothesis or theory other than that he is guilty as charged; and if their remains in the case, all the evidence considered, any reasonable theory, arising out of the evidence, which raises in the mind of the jury a reasonable uncertainty of defendant's guilt, such a state of evidence would justify an acquittal." We think the court's instruction did not fully advise the jury as to the exclusion of every reasonable theory other than that of guilt, and that its general statement—while sufficient in the absence of a special request—while not, in our opinion, reversible error, was not all the plaintiff in error was entitled to.

Another assignment we will notice relates to the failure of the court to instruct, upon special request made, as to the sanity or insanity of the witness Ortega, so that the jury could consider the attack made upon him, in weighing his credibility and the weight to be given his testimony. The testimony of this witness

SANITY of witness: request for instruction.

was exceedingly important, and, though the testimony in the attack made appears to have been slight, yet if there was any the court should have instructed in that regard, if specially requested. Thorwegan v. King, 111 U. S. 549, 4 Sup. Ct. 529; Pennock v. Dialogue, 2 Pet. 1. The decision of this court in holding that, where the general charge substantially covers what is requested, there is no error in refusing to give what is requested, must by inference be considered as recognizing this rule. Territory v. Trujillo, 7 N. M. 43; U. S. v. De Amador, 6 N. M. 178; Territory v. O'Donnell, 4 N. M. 210. The court admitted in evidence questions tending to show that witness talked irrationally at times, that he "fussed" with women without cause or provocation, and that he acted in a way that caused a witness to think he did not have good sense. It rejected the answer of Judge Wooster when he was asked as to the demeanor of Ortega at the coroner's inquest, as compared to what it was before the jury in the trial in the court below. Judge Wooster answered that the demeanor was similar, as near as he could remember; that he was considered by him there as being a very stupid witness, and uncertain as to facts he stated. The court also rejected direct questions calling for an opinion as to Ortega's sanity or insanity, and what was his reputation as to sanity or insanity. Upon the subject of impairment of the mind, it is stated in Pease v. Burrows, 29 Atl. Rep. (Me.) 1061, that "the adjudged cases on this subject are few, but the doctrine of them seems to be that the condition of the mind, if the witness is capable of appreciating the truth, must go to the credibility of the witness, and be submitted to the jury." In Reg. v. Hill, 5 Cox, Cr. Cas. 259, Lord CAMPBELL, in delivering judgment, said: "It is for the

*Sanity of witness: testimony of nonexpert: competency.*

judge to say whether the insane person has the sense of religion, and whether he understands the nature and sanction of an oath, and the jury are to decide the credibility and weight of his evidence." This enunciation was expressly approved in District of Columbia v. Armes, 107 U. S. 519, 2 Sup. Ct. 840. When it is remembered in this connection that the witness Ortega stated that he did not know the nature of an oath, it would appear that this instruction asked, and which was upon a subject not directly referred to in the court's charge, should have been given. There is a most interesting discussion upon the subject of what testimony may be given by witnesses, who are not experts, in the way, if not of opinion, at least closely allied to opinion, found in Com. v. Sturtivant, 117 Mass. 133, in which the opinion was delivered by ENDICOTT, J., and concurred in, among others, by GRAY, C. J., and DEVENS, J. It does not appear from that opinion that a witness not an expert may directly say whether, in his opinion another is sane or insane, but he can testify to conclusions, as to which the details enabling him to arrive at the conclusions can not be presented to the jury. After citing very numerous examples in decisions from various states, the learned judge summarized the matter as follows: "The competency of this kind of evidence rests upon two necessary conditions: First, that the subject-matter to which the testimony relates can not be reproduced, as described to the jury, precisely as it appeared to the witness at the time; and, second, that the facts upon which the witness is called to express an opinion are such as men in general are capable of comprehending and understanding." As to this, a very apt example appears in the case of McKee v. Nelson, 4 Cow. 355, which was a breach of promise case, and the trial court admitted the following question: "Is it your opinion that the plaintiff was sincerely attached to the defend-

ant?" The court say: "We think the judge's decision
founded on good sense, and, in the nature of things,
we do not see how the various facts upon which an
opinion of the plaintiff's attachment must be grounded
are capable of specification, so as to leave it, like ordi-
nary facts, as a matter of inference to the jury.   It is
true that, as a general rule, witnesses are not allowed
to give their opinions to a jury; but there are excep-
tions, and we believe this to be one.   There are a
thousand nameless things, indicating the existence of
the tender passion, which language can not specify.
The opinion of a witness on this subject must be
derived from a series of incidents passing under his
observation, which yet he could not detail to a jury."
In Com. v. Wilson, 1 Gray, 337, the court, speaking
by Chief Justice SHAW, says "that a witness not an
expert can testify as to the appearance and conversa-
tion of a person with whom he had interviews, but not
what opinion he formed at those interviews of his
mental condition."   In Barker v. Comins, 110 Mass.
487, in which the question was as to the sanity of a
testator, Justice GRAY, delivering the opinion, said
that a witness could not answer whether testator was
of sound or unsound mind, but could testify whether
there was apparent change in the man's intelligence or
understanding, or want of coherence in his remarks, as
this was not a matter of opinion, but of fact, as to which
any witness who has had an opportunity to observe
may testify, in order to put before the jury the acts
and conduct from which the degree of mental capacity
may be inferred.   Under the rule we have stated, as
laid down in Com. v. Sturtivant, supra, and with
which the decisions we have cited seem to be in accord,
and which we think the true rule, we hold that such
testimony as Wooster gave was competent, that wit-
nesses could be asked as to conduct and appearance,
and that this testimony should have been admitted

along with what was admitted, but not the questions directly calling for an opinion as to the sanity or insanity of said Ortega, and, of course, not what was his general reputation as to sanity.

It is complained also that the court did not fully advise the jury, by definitions of terms used by the statute, as to what was meant by the degree of murder, to which their attention was confined. As, in the retrial of this case, it will (if defense is made as in the record before us) be necessary to instruct as to all the degrees, and as to justifiable and excusable homicide as well, this error can not be expected to recur. Wherefore it is considered that this cause be reversed, and remanded for a new trial.

LAUGHLIN, J., dissents.

BANTZ and HAMILTON, JJ. (concurring).—We fully concur in the opinion of Justice COLLIER in this case, except as to that portion which holds that a nonexpert may not state his opinion or conclusion as to the sanity or insanity of a person whose mental soundness or capacity is under consideration. When a nonexpert is shown to be qualified, by reason of opportunity for knowing and observing the person under investigation, he may not only state what he has observed in the conversation or conduct of such person tending to indicate his mental condition, but the nonexpert may also state his conclusion or opinion as to the ultimate fact, founded as it is or may be upon a series of facts more or less symptomatic, and not susceptible of intelligent narration. When a witness testifies that a person appeared to be angry or sick, he states a conclusion or opinion based upon a number of symptomatic facts which could not be adequately detailed so as to photograph to the jury the same impression which they made upon the mind of the observer when they were seen, and the statement of the conclusion can alone

describe the facts seen.  The case in Massachusetts gives many illustrations of this rule, and it is now well established that the same rule is applicable to a nonexpert, as in the case at bar.  Upon this subject Mr. GREENLEAF says:  "But where the witness has had opportunity for knowing and observing the conversation, conduct, and manner of persons whose sanity is in question, it has been held, upon grave consideration, that the witness may depose, not only to particular facts, but to the opinion or belief as to the sanity of the party, formed from such actual observation;" "that nonexperts, who have had opportunities to observe a person, may give their opinion of his sanity, at the same time stating their reasons, and the facts observed upon which they based their opinion."  1 Greenl. Ev. [4 Ed.] 532; Whart. Cr. Ev. [9 Ed.], secs. 417, 458, 460.