## THORWEGAN *v.* KING.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

. Submitted April 15th, 1884.—Decided May 5th, 1884.

*Court and Jury—Deceit.*

Where the complaint in an action on the case for deceit by false representations whereby a party was induced to enter into a contract, charged a positive misrepresentation of an existing fact, and all the evidence intended to establish fraud was directed to the proof of that specific misrepresentation, it was error in the presiding judge not to confine his instructions to the point in issue, and when requested by the jury for instruction as to the effect of withholding information concerning the subject of the contract, not to instruct them that there was no evidence in the case which authorized their request for instructions on that point.

*Mr. Given Campbell* for plaintiff in error.

*Mr. James Carr* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This was an action at law brought by the defendant in error to recover damages for an alleged deceit. The cause of action, as set out, was substantially as follows: That Thorwegan, the defendant below, was the owner of a steamboat, called the Grand Republic; that, on or about October 1st, 1876, knowing the boat to be heavily encumbered with liens, claims, and debts to the amount of about $75,000, with a view and design to injure, cheat, and defraud the plaintiff, he falsely and fraudulently represented to the plaintiff that the boat was substantially free from all liens, claims, debts, and liability, except to a small amount, which he, the defendant, would forthwith pay off and cause to be discharged, as a preliminary to merging the title and ownership of said boat in a corporation to be organized by the defendant to receive such title and ownership, and to issue stock therein, representing the full value of said boat, free and clear of all encumbrances, debts, liens, and liabilities then existing, and that if plaintiff would advance to the defendant, at that time, $12,000, he should become interested

in said boat, and that the defendant would forthwith organize such corporation, and convey to it the title to said boat, free of all encumbrance and liability, and issue to the plaintiff one hundred and twenty-five shares of stock therein, representing one-eighth of the ownership of the boat, free of all encumbrance, and one-eighth of the capital stock of the corporation; that the plaintiff, relying on said representations and believing them to be true, and especially that the boat was at that time substantially free and clear of all debts, encumbrance, and liability, and that it would be wholly free and clear of the same when merged in and the title and ownership transferred to the corporation, did, on or about October 1st, 1876, advance to the defendant the said sum of $12,000 for the said interest in said boat and the stock of the corporation; that afterwards, about October 6th, 1876, the defendant caused said corporation to be organized under the name of the Grand Republic Transportation Company, with a capital stock of $100,000, in shares of $100 each, and conveyed to it the title to the said boat, but the same was at that time subject to encumbrances and liabilities, as aforesaid, to the amount of $75,000, and of the said capital stock caused to be issued to the plaintiff one hundred and twenty-five shares, being one-eighth of the whole number; that, in consequence of said encumbrances, said stock was, and continued to be, wholly without value, and thereby the said sum paid for the same was wholly lost to the plaintiff.

The defendant answered, denying all charges of fraud and misrepresentation, and pleading in bar of the action his subsequent discharge in bankruptcy. To this the plaintiff replied the fraud alleged in the complaint.

It is manifest that the case of the plaintiff below, as stated in the pleadings, turned upon the questions whether the defendant made the alleged representation as to the liabilities of the boat, existing at the time of the advance of money, made by the plaintiff, whether such representations, if made, were false and fraudulent, and whether the plaintiff acted on the faith of their truth. Everything else charged in the complaint —that the defendant would pay off the encumbrances and liabilities before transferring the boat to the corporation, and

would convey to it a title free and clear of all liability, on account of any existing debt—was promissory in its nature, related to the future, depended on contract merely, and could not be, of itself, the foundation of an action for deceit. At most, it would be but a warranty of the title against encumbrances and liability for debts, for breach of which an action on the agreement would accrue.

The only evidence adduced in support of the averments as to the representations made, and alleged to be false and fraudulent, was the testimony of the plaintiff himself as to the circumstances of the transaction.

From this, it appeared that the entire amount of $12,000 was not advanced in one sum, but in two, at different times. As to the first, of $5,000, it was clear, beyond dispute, that it was made before the transaction relating to the sale of the interest in the boat, and not even in contemplation of it, but as a loan, to meet an immediate necessity of the defendant, and without inquiry or security; although it was included in the verdict, the Circuit Court declined to enter a judgment for the full amount, and required the plaintiff to enter a *remittitur* of that sum, as the alternative of a new trial, and it was complied with.

The second advance of $7,000, it appears, was made a few days afterwards, and in pursuance of negotiations for a sale by the defendant to the plaintiff of an interest in the boat, to be consummated by the transfer to the proposed corporation and the issue of its stock.

It is perfectly clear, from the testimony of the plaintiff himself, that, at the time of the second advance of the sum of $7,000, he was informed and well knew that the boat was not free from encumbrances and liabilities. On the contrary, he himself says, that he made the advance to enable the defendant to pay debts then existing. He testified that Thorwegan said, "if he could get that much money it would pay out the debt and would have her clear of all debts; and that if he didn't get the money the boat would be tied up before he left here, and he wouldn't be able to turn a wheel." This is the strongest statement made by the plaintiff as to any representa-

tion of the defendant in reference to the amount of the boat's existing indebtedness. In the same connection, the witness stated, that nothing was said about the amount of the indebtedness. On cross-examination, the following questions and answers sum up the transaction:

"169 int. As I understand, you testify in your examination in chief that Thorwegan promised that he would pay off the debts due by the boat and all the demands against her?

"A. Yes, sir.

"170 int. And you relied on that promise?

"A. Yes, sir.

"171 int. And you let him have your money?

"A. Yes, sir.

"172 int. That's the way of it?

"A. Yes, sir.

"173 int. You didn't care about an interest in this boat particularly, but you wanted to help Thorwegan more than anything else; that was your motive?

"A. That was the motive. I saw he was in trouble, as he stated to me."

On re-examination, the following question and answer appear:

"179 int. At that time, in October, 1876, you placed full reliance on the representations that the boat was free and clear of all debts, didn't you?

"A. I did: that she was turned over (to) me clear of all debts due and demands up to that date. It was not on the 1st of October; the boat was to be turned over to me when she was at the wharf ready for receiving cargo. That was the understanding, and the captain will state that fact himself."

At the time of the transaction the boat was undergoing repairs. When these were finished the corporation was organized as proposed, and the boat transferred to it; but, as appeared from the testimony of the clerk, introduced as a witness on the part of the plaintiff, with an unpaid indebtedness at that time of $68,000, of which about $10,000 were liens upon the boat, the remainder being represented by notes, &c., on building account. The boat was worth from $160,000 to $175,000, in his

opinion, at that time. She was lost by fire in September, 1877. There was insurance on her, however, only for $50,250, which went to pay creditors.

On the part of the defendant, a writing obligatory was introduced as evidence, signed and sealed by the defendant, reciting the agreement with the plaintiff of October, 1876, for a sale of one-eighth interest in the boat, represented by one-eighth of the stock of the corporation, and containing a covenant to hold the plaintiff harmless from all claims, encumbrances, and liabilities existing on said steamer at that date, and agreeing to pay all claims and encumbrances existing on said boat on that day, as well as all maritime and other liens, so that no part thereof as against him should be chargeable to or paid by the new company, a copy of which was set forth in the original petition of the plaintiff.

The defendant was called on his own behalf, and denied making any representations as to the indebtedness of the boat at the time of the sale.

There was evidence, taking up much space in the record, consisting of accounts showing receipts and disbursements on account of the boat for sixteen trips, most of them made after the sale to King, and of the examination of the clerk in reference thereto, which, in our opinion, ought not to have been admitted. It was irrelevant, and tended to confuse and mislead the jury to the prejudice of the defendant by suggesting questions of good faith as to the management of the boat, after the transaction in question, which were not part of the issue, and which threw no light upon it.

In this state of the evidence, the defendant requested, among others, the following instruction to be given to the jury:

"The jury are instructed that unless the evidence clearly shows that defendant, with intent to defraud the plaintiff, falsely represented to him some material facts alleged in the petition, and relied on by the plaintiff, whereby plaintiff, to his damage, was induced to enter into the contract described in the petition, then they must find for the defendant."

This the court refused to give, and to this refusal exception was duly taken.

The proposition contained in the request is a correct statement of the law, and strictly applicable to the case. The defendant was entitled to have it given to the jury, if not in the precise form asked, at least in substance. It is not contested in argument as unsound; but the refusal to give it is met by the claim that it was given, substantially as prayed, in the charge of the court. This is set out in full in the bill of exceptions, and it becomes necessary, therefore, to examine it, to ascertain whether it properly covers the point of the instruction asked for and refused.

That examination satisfies us that it does not; but that, on the contrary, it contains directions to the jury, inconsistent with the instruction requested. Among other things, the court in its charge said:

"The complaint is that by fraudulent and false statements, a suppression of the truth on the part of the defendant, the deception was practised upon the plaintiff."

And: "The law will not permit any one to make fraudulent representation, and thus obtain from the party some valuable thing, money or otherwise. If any one commits a fraud of that kind, and thereby another loses his money, having trusted to what was said to him, why the individual who does it is still responsible to the party thus defrauded. And in this connection, gentlemen, you will view the whole case, not only what the party said, but if you shall come to the conclusion he left things unsaid that he ought to have said, that is, that there was a suppression of truth when it was demanded from him, or from other circumstances of the case, he ought to have disclosed the facts, that is just as bad as asserting a fact which does not exist, and in relation to that, you will have to view it with the acts of the other party also."

After the jury had retired they requested further instructions, as follows: "The jury desire to be instructed whether the withholding of the true financial condition of the boat constitutes a fraud?" And, in answer, the court said: "If the disclosing of it, as I have told you before, became a duty—that is, if the withholding was intentional for the purpose of accomplishing a fraud upon the individual—and it was necessary for it to be

disclosed, then such withholding would be a fraud. But if the individual advanced the money without any question, or any question concerning the financial condition of the boat, or if he took other guaranties, so as to secure himself against contingencies, then it might not be necessary. I can't answer the question by saying yea or nay, for the very question depends on the circumstances of the case. For instance, I am talking to an individual designing to accomplish an object. If I find that individual is desirous of obtaining certain information for the purpose of either denying or granting the request I make, and I withhold the information, that is a fraud, provided I do it with the intention of inducing him to do a thing that he would not otherwise do. That is a fraud or deceit, as the law calls it. . . . If you should come to the conclusion that it became necessary for this individual to know the financial condition of the boat, and it was withheld by the other party intentionally, for the purpose of misleading him, then you should solve this question as you think the testimony justifies."

This charge assumes that the plaintiff's case was based upon a fraudulent suppression of material facts, knowledge of which the defendant was under some legal duty to communicate, and that there was evidence before the jury tending to prove the allegation. The assumption is wrong in both its parts. No such averment is made in the pleadings, and there was nothing in the evidence tending to prove it. The whole case, as we have heretofore stated, as exhibited in the petition or complaint, rested upon an alleged positive misrepresentation of an existing fact; and all the evidence intended to establish the fraud charged was directed to the proof of that actual misrepresentation. There was no suggestion of any such relation between the parties, or of anything in the circumstances of the transaction, that imposed upon the defendant the legal obligation of making any disclosures, in respect to which he failed to speak. The whole charge was, that having undertaken to make a statement of a particular condition of facts, he had done so falsely and fraudulently.

The court therefore should have confined its instructions to the jury, to the point really involved in the issue, and, omitting

what was said in respect to fraudulent suppressions, informed them, that there was no evidence in the case that authorized their request for further instructions, upon the point involved in their inquiry.

It was error, therefore, to refuse to give the instruction asked for by the defendant, as set out above.

*The judgment is reversed, and the cause remanded, with directions to grant a new trial.*