5/15/98

1-97-2300

PETER J. HARTMANN CO., an Illinois ) 

corporation, ) 

) Appeal from the 

Plaintiff, ) Circuit Court of

) Cook County.

v. )

) 

CAPITAL BANK AND TRUST COMPANY, as ) 

Trustee under Trust Agreement )

No. 1975, 
et
 
al
., ) 

) 

Defendants. ) 

)

------------------------------------------) 

PARKVIEW PLAZA ASSOCIATES, INC., ) 

STEPHEN D. KORSHAK, ROBERT NEIL ) 

BEAULIEU, DANIEL R. PONTARELLI, ANTHONY ) 

E. MINISCALCO, and EMIL ROSS, INC., ) 

) 

Counter-Plaintiffs/Appellants, )

)

v. ) Honorable

) David Lichtenstein, 

PETER J. HARTMANN CO., ) Judge Presiding.

) 

Counter-Defendant/Appellee. ) 

JUSTICE HARTMAN delivered the opinion of the court:

Counterplaintiffs Parkview Plaza Associates, Inc. (Parkview), Stephen D. Korshak, Robert Neil Beaulieu, Daniel R. Pontarelli, Anthony E. Miniscalco (individual appellants), and Emil Ross, Inc. (Ross) appeal the dismissal of Parkview's fifth amended counterclaim against counterdefendant, Peter J. Hartmann Co. (Hartmann), and the dismissal of the remaining counterplaintiffs from the countersuit, contending that Parkview's fifth amended counterclaim stated a cause of action for common law fraud, a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 (West 1994)) (Consumer Fraud Act), and negligent misrepresentation.  They also assert that they had standing to bring a counterclaim against Hartmann.  

From the fifth amended counterclaim, the following factual allegations appear.  In September 1989, Hartmann was engaged in the business of providing, installing, testing, repairing, removing, and disposing of underground storage tanks, and cleaning up environmental contaminants.  On or about November 24, 1989, Hartmann contracted with Ross, a general contractor, to perform the following services on property owned by counterclaimants (subject property), except Ross:  (1) excavate and dispose of four underground storage tanks; (2) obtain an analysis of the surrounding soil; and (3), if necessary, remove contaminated soil from a former gasoline station located at 2700 W. Irving Park Road in Chicago.  Individual counterplaintiffs contracted to purchase the subject property.  Beaulieu and Korshak were Illinois licensed attorneys at law.  Pontarelli and Miniscalco owned Ross.

Parkview asserts that prior to September 1989, Hartmann's agent John Corkill (J. Corkill), learned that Ross was seeking an excavator/subcontractor to remove certain underground storage tanks from the subject property, and that Ross could not enter into such a subcontract without Parkview's approval.  In September 1989, J. Corkill introduced Hartmann to Parkview representing that Hartmann possessed expertise to remove the underground tanks, analyze the surrounding soil for any contamination, and cleanup any contaminated soil.  Parkview, through its president, Beaulieu, responded to Hartmann's solicitation by explaining to J. Corkill that Parkview was presently negotiating to purchase the subject property for commercial development and was concerned about several old petroleum storage tanks buried in the ground, as well as the extent of contamination in the soil due to possible leaking of the old tanks.  Beaulieu allegedly told J. Corkill that Parkview:   was negotiating with another tank removal company to determine the cost of clean-up; was in need of an expert to advise it as to the total cost of tank removal and soil clean-up so that the purchase price of the realty could be determined; and was presently considering termination of the property purchase and development if the cost of soil contamination removal was too high.

The instant pleading claims further that during the negotiations, Hartmann, through J. Corkill, represented to Parkview, through Beaulieu, that Hartmann was fully capable of evaluating the extent of underground soil contamination on the subject realty; its engineers and other employees were at that time experienced in analyzing contaminated soil problems like the one then present in the subject realty; its engineers and other employees could provide all the knowledge, expertise, experience and manpower necessary to determine the amount of contaminated soil; it could establish an accurate price or cost for tank removal, contaminated soil clean-up and disposal prior to Parkview's making any final commitment to purchase the subject realty; its evaluation will be accurate enough for Parkview to pre-determine the cost of any required clean-up of contaminated soil in conjunction with tank removal; it had reviewed soil tests received from Illinois Drilling & Testing, Inc. (which previously secured samples from the subject property) and determined that, to establish clean-up costs, no further soil testing would be needed prior to excavation; it had enough information by November 1989 (from said soil tests, site inspection and prior knowledge of the site) to conclude that the amount of contaminated soil then present on site could be cleaned up with less than one week's work, and that the soil contamination then present on site could be cleaned up for less the $10,000, including tank removal and disposal.  

The fifth amended counterclaim then asserts that the foregoing statements were known by Hartmann through J. Corkill to be false when he made them, or they were made with reckless disregard of whether they were true or false and were in fact false and untrue in that Hartmann lacked the capability in 1989 to accomplish the type of precise pre-excavation soil analysis and evaluation which Corkill described; and/or the clean-up costs of subterranean soil contamination then present in said realty was more than twenty times greater than Hartmann claimed was there by virtue of its analysis of the property.

Parkview next alleged that these statements were made by Hartmann through J. Corkill for the purpose and with the intent of deceiving and defrauding Parkview and, in reliance on them, to induce it to refrain from terminating the purchase of said realty and instead continue the plans to purchase and develop said realty; and to induce the authorized execution of a contract between Hartmann and Ross for tank removal and soil clean-up from which Hartmann would benefit.  Parkview next claimed the right of reasonable reliance on the statements made by Hartmann because Hartmann held itself out to be an expert in tank removal/soil clean-up, an expert advisor to clients on the extent of soil contamination, and an expert on the cost of clean-up prior to excavation.

Further allegations assert that Parkview believed the statements made by Hartmann were true; Parkview relied on them and was induced by them to refrain from exercising its option to terminate the real estate purchase contract and instead proceed with plans to purchase said realty and the related construction efforts; and Parkview thereby was induced by Hartmann to authorize general contractor Ross to execute an agreement with Hartmann for a sum less than $10,000 for removal of tanks and contaminated soil clean-up.  Ross and Hartmann thereafter entered into a written agreement for tank removal and contaminated soil clean-up on November 24, 1989.  After execution of the agreement with Ross to remove tanks and clean-up soil for $9,700, Hartmann disclosed that the actual cost of clean-up and tank removal would exceed $10,000.  Hartmann is alleged to have known that the prospect of clean-up costs exceeding the $9,700 contract price was likely to result in Parkview terminating the real estate purchase and eliminating Hartmann's subcontract.

From December 1989 through July 1990, Parkview claims, through its agents, J. Corkill and Gary Corkill (G. Corkill), intending to further deceive and defraud it to protect its status as subcontractor, represented and stated that Hartmann, by virtue of Illinois E.P.A. Superfund coverage, had limited Parkview's exposure to a maximum of $10,000 and that any "extra" costs of clean-up would be paid by the Superfund; Hartmann had qualified the clean-up site for Illinois E.P.A. Superfund reimbursement; all required government permits and permission, and other paperwork needed to meet Illinois E.P.A. requirements for reimbursement, were Hartmann's responsibility and would be taken care of by Hartmann; once work began in earnest, tank removal and soil clean-up would be completed in a short period of time; and delays in work completion from December 1989 to June 1990 were weather related, or otherwise were not Hartmann's fault.  The foregoing statements were known by Hartmann through its agents, the Corkills, to be false when made, or were made by them in reckless disregard of whether they were true or false; they were in fact false and untrue in that Hartmann failed to secure any government permits, permission or other paperwork necessary to qualify the site for Illinois E.P.A. Superfund reimbursement, it never qualified the site for Illinois E.P.A. Superfund reimbursement, it did nothing to trigger Illinois E.P.A. Superfund reimbursement for any clean-up costs in excess of $10,000, its work effort never reached a point where work would be completed in a short period of time, and delay of completion of work was not weather related, and was in fact due to Hartmann's deliberate stalling.  

After Ross and Hartmann subcontracted for Hartmann's removal of four underground storage tanks and contaminated soil from the Irving Park property,  Hartmann almost immediately began work on the environmental cleanup, and periodically sent requests for payment to Ross, all of which were ignored.  On January 15, 1990, Hartmann requested payment of $4,500.  On February 5, 1990, Hartmann sent a bill for $1,820.  On July 31, 1990, Hartmann issued an invoice for $2,700.  In its last statement, dated August 12, 1990, Hartmann requested the balance, $9,020.  Hartmann subsequently removed its employees and equipment from the Irving Park property, filed a claim for a mechanic's lien, and issued a bill calculating the total amount due at $279,824.35.

Hartmann also filed a complaint to foreclose the mechanic's lien and for breach of contract against Parkview, Ross, the four individual counterplaintiffs, and other interested parties.  Hartmann alleged that during its performance of the contract, Ross asked Hartmann to perform additional work on the Irving Park property, and agreed to pay for the extra expenses.  Hartmann subsequently filed three more mechanic's lien notices against the property's title, each in the amount of $279,824.35, which Hartmann alleged it was owed under the subcontract.

Several of the defendants responded to the complaint by filing a counterclaim against Hartmann most of which is detailed above as part of the fifth amended counterclaim.  They sought damages in the amount of $450,000.  

The circuit court dismissed the counterclaim pursuant to Hartmann's motion, but granted leave to file an amended counterclaim.  Hartmann successfully moved to dismiss Count II of the amended counterclaim, which alleged negligent misrepresentation, and filed an answer to Count I, which asserted a claim for fraud.  The four individual counterplaintiffs moved for summary judgment on Hartmann's complaint, arguing that they could not be held personally liable and were not proper parties to the suit.  Hartmann moved for summary judgment on the remaining count of counterplaintiffs' amended counterclaim.

The circuit court denied the summary judgment motions, then transferred the case to the law division for a jury trial.  The law court struck the amended counterclaim pursuant to section 2-612 of the Code of Civil Procedure (735 ILCS 5/2-612 (West 1994)) (section 2-612).  Counterplaintiffs filed a three-count, 40-page, 87-paragraph second amended counterclaim, which the court also struck.  Counterplaintiffs filed a third amended counterclaim, alleging that Hartmann committed common law fraud, violated the Consumer Fraud Act, and made negligent misrepresentations.  The circuit court again struck this counterclaim pursuant to section 2-612.  Counterplaintiffs filed a fourth amended counterclaim, raising similar claims and requesting that the court invalidate and void the mechanic's lien.

Counterplaintiffs unsuccessfully moved for summary judgment on Hartmann's amended complaint.  The circuit court struck the fourth amended counterclaim with respect to all counterplaintiffs with prejudice, except for Parkview, and gave Parkview leave to amend its pleadings.  Parkview filed a three-count fifth amended counterclaim.  The court ruled that the counterclaim "fails to cure the defects (particularly with respect to averments relating to duty) of its prior pleadings,"  granted Hartmann's motion to dismiss the fifth amended counterclaim and denied Parkview's motion to file a sixth amended counterclaim.  Counterplaintiffs appeal.

The circuit court granted Hartmann's motion to dismiss the fifth amended counterclaim based upon sections 2-615 and 2-619 of the Code of Civil Procedure.  735 ILCS 5/2-615, 619 (West 1994).  A section 2-615 motion to dismiss attacks the legal sufficiency of the complaint, whereas a section 2-619 motion raises defects or defenses that negate a cause of action, or refute crucial conclusions of law or material fact that are unsupported by allegations of specific fact.  
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377 (1996).  Motions to dismiss pursuant to either provision admit all well-pleaded facts together with all reasonable inferences that can be gleaned from those facts.  
Lawson
, 278 Ill. App. 3d at 634.  The issue to be considered by such a motion is whether significant facts are contained in the pleadings, which, if established, would entitle the complainant to relief.  
Bryson v. New American Publications
, 174 Ill. 2d 77, 84, 672 N.E.2d 1207 (1996).  No cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle the complainant to recover.  
Bryson
, 174 Ill. 2d at 86-87.  Orders granting or denying such motions are subject to 
de
 
novo
 review.  
Crespo v. Weber Stephen Products Co.
, 275 Ill. App. 3d 638, 641, 656 N.E.2d 154 (1995).

I

The parties first dispute whether Parkview had to allege the existence of a duty in order to sustain a claim for fraud.  The elements of a common law fraud claim, as prescribed by the supreme court, include:  a false statement of material fact; defendant's knowledge that the statement was false; defendant's intent that the statement induce plaintiff to act; plaintiff's reliance upon the truth of the statement; and damages resulting from that reliance.  
Connick v. Suzuki Motor Co.
, 174 Ill. 2d 482, 496, 675 N.E.2d 584 (1996) (
Connick
); 
Soules v. General Motors Corp.
, 79 Ill. 2d 282, 286, 402 N.E.2d 599 (1980) (
Soules
).  

Hartmann contends that 
Connick
 stands for the proposition that a common law fraud claim must include an allegation that defendant concealed a material fact he was under a duty to disclose.  The 
Connick
 court stated this rule in the context of a claim for fraudulent concealment, however, which requires that the complaining party allege that defendant concealed a material fact that it was under a duty to disclose.  
Connick
, 174 Ill. 2d at 500.  The fifth amended counterclaim does not allege that Hartmann failed to disclose pertinent information; instead, Parkview claims that the information Hartmann gave Parkview was false and misleading.  The counterclaim states a cause of action for fraudulent misrepresentation rather than fraudulent concealment.  See 
Thorwegan v. King
, 111 U.S. 549, 555, 28 L. Ed. 514, 516, 4 S. Ct. 529, 531 (1884).

Fraudulent misrepresentation claims do not require articulation of a duty to disclose as an element of the cause of action, because such claims are predicated on a more general moral obligation to speak the truth and not to deceive when an affirmative action is taken, such as a representation intended to initiate a response on the part of the reliant recipient.  See 
Cipollone v. Liggett Group, Inc.
, 505 U.S. 504, 528, 120 L. Ed. 2d 407, 430, 112 S. Ct. 2608, 2624 (1992).  Neither 
Connick
 or 
Soules
 require the articulation of duty in false representation cases, which are intentional deceit cases, in contrast to negligent 
representation cases in which identification of duty is an element of the cause of action.  See also 
Thorwegan v. King
, 111 U.S. at 555, 28 L. Ed. at 516, 4 S. Ct. at 531.

A fraudulent misrepresentation claim must state, with sufficient particularity and specificity, facts establishing the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made, as was done in the instant case.  
Connick
, 174 Ill. 2d at 497; 
Board of Education of the City of Chicago v. A, C & S, Inc.
, 131 Ill. 2d 428, 457, 546 N.E.2d 580 (1989); 
People ex rel. Peters v. Murphy-Knight
, 248 Ill. App. 3d 382, 387, 618 N.E.2d 459 (1993).  Parkview here sufficiently alleged that Hartmann made false statements of material fact, knew they were false, and intended for Parkview to rely on the statements, causing Parkview to suffer damages as a result of its reliance.  The absence of any legal conclusion respecting duty was, at most, a defect of form, rather than substance, if a defect at all.  The circuit court's dismissal of count I of Parkview's counterclaim, for failure to allege a legal duty not to be deceitful, is akin to asserting that parties have a duty to be honest or truthful, was erroneous.  Hartmann was well apprised of the claims made against it.  735 ILCS 5/2-612(b).

Hartmann next asserts that the counterclaim is insufficient because it contains opinions and statements of future contingent events, which are considered affirmations, not statements of fact.  In an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion.  
Peters
, 248 Ill. App. 3d at 387; 
Ault v. C.C. Services, Inc.
, 232 Ill. App. 3d 269, 271, 597 N.E.2d 720 (1992).  Promises relating to future conduct, or statements of opinion, may be actionable as fraud, however, under certain circumstances.  
Steinberg v. Chicago Medical School
, 69 Ill. 2d 320, 332-33, 371 N.E.2d 634 (1977); 
Duhl v. Nash Realty Inc.
, 102 Ill. App. 3d 483, 489-91, 429 N.E.2d 1267 (1981) (
Duhl
).
  In 
Steinberg
, defendant listed specific standards that it professed it would use when evaluating medical school applicants.  In 
Duhl
, defendants represented to plaintiffs that they applied certain criteria in rendering a professional opinion on the value of plaintiffs' home.  Analogously, in the present case, Hartmann allegedly told Parkview that based upon its soil analysis, the cost of the cleanup would not exceed $10,000, and the Irving Park property qualified for State funds, which would pay any costs exceeding $10,000.  Parkview claimed it relied on these representations in taking action, here finalizing the purchase price for the Irving Park property.  Hartmann's alleged statements consist of existing, quantifiable facts, and were more than mere expressions of opinion, as Parkview was expected to rely on the representations.

Hartmann contends that Parkview failed to allege sufficiently the second element of its fraud claim, that Hartmann knew these representations were false.  Parkview responds that at the time Hartmann made the representations regarding soil damage in November 1989, Hartmann did not have to know the actual extent of soil contamination; rather, Hartmann should have known that the available data was insufficient to make such a determination.  Parkview asserts that Hartmann either lied about the extent of its expertise, or lied about the reliability of the available data.

A party is considered to intend the necessary consequences of its acts.  
Posner v. Davis
, 76 Ill. App. 3d 638, 643, 395 N.E.2d 133 (1979).
  Therefore, one who knowingly makes a false statement to another who relies on the statement, is guilty of fraud, regardless of his motive.  
Buechin v. Ogden Chrysler-Plymouth, Inc.
, 159 Ill. App. 3d 237, 247, 511 N.E.2d 1330 (1987); 
Duhl
, 102 Ill. App. 3d at 491.  Additionally, representations made in reckless disregard or culpable ignorance of their truth or falsity, will support an action for fraud.  
Duhl
, 102 Ill. App. 3d at 491-92.  As the supreme court has stated, "the affirmation of what one does not know to be true is unjustifiable, and if another act upon the faith of it, he who induced the action must suffer, and not the other."  
Brennan v. Persselli
, 353 Ill. 630, 635, 187 N.E. 820 (1933), quoted in 
Duhl
, 102 Ill. App. 3d at 492.

In 
Duhl
, the court noted that plaintiffs' allegations regarding defendants' intent were "less than ideal
," but concluded that they were sufficient to inform defendants of the nature of the claim.  
Duhl
, 102 Ill. App. 3d at 491.  Similarly, in the present case, Parkview's allegation that defendant either knew the data was insufficient to make a determination regarding soil contamination, or knew that it did not possess the expertise to properly interpret the data, 
sufficiently informed Hartmann of the nature of its claim.  Hartmann's defense to this claim, that determining the level of soil contamination is complex and difficult, is a factual issue that must be resolved at trial, and is not determinative of pleadings sufficiency.

Additionally, Parkview pled that Hartmann intended to induce Parkview into authorizing the subcontract with Ross and completing its purchase of the Irving Park property.  Although Hartmann was neither a party to nor a direct beneficiary of the property purchase contract, if Parkview did not purchase the property, Hartmann would not have received the subcontract to clean up and dispose of environmental hazards.  Parkview sufficiently alleged that Hartmann induced it to purchase the property in order to obtain the subcontract with Ross.

The parties also dispute whether the remaining elements of a fraud claim, reasonable reliance and damages, were pled sufficiently in the fifth amended counterclaim, and refer to deposition testimony and other evidence obtained during pretrial discovery.  This appeal involves the sufficiency of the pleadings, specifically the adequacy of the allegations in the fifth amended counterclaim.  Those allegations are presumed to be true for purposes of determining whether Parkview established one or more causes of action.  
Century Universal Enterprises, Inc. v. Triana Development Corp.
, 158 Ill. App. 3d 182, 187, 510 N.E.2d 1260 (1987) (
Century Universal
).  The evidence referred to by the parties is irrelevant to this determination.   

Parkview adequately alleges that:  Hartmann presented itself as an expert on the environmental cleanup issue; Parkview informed Hartmann it was relying on its determination of the projected expenses in deciding whether to purchase the Irving Park property; Parkview negotiated the purchase price according to the numbers given to it by Hartmann, and paid more than it should have for the property because Hartmann dramatically underestimated the cost of the cleanup; and Parkview never would have purchased the property had it known the full extent of environmental damage.  

II

Parkview next argues that count II of the fifth amended counterclaim states a claim under the Consumer Fraud Act.  Section 2 of the Act declares as unlawful "the use or employment of any deception, fraud, false pretense, false promise, [or] misrepresentation ***."  815 ILCS 505/2 (West 1994).  To establish a claim under the Act, plaintiff must allege (1) the commission of a deceptive act or practice; (2) intent on defendants' part that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce.  
Siegel v. Levy Organization Development Co.
, 153 Ill. 2d 534, 542, 607 N.E.2d 194 (1992).   

Our legislature enacted this statute to create "broad protective coverage of consumers from the many types of deceptive or unfair selling and advertising techniques used by businesses," and to give consumers broader protection than a common law fraud action.  
Duhl
, 102 Ill. App. 3d at 495.  A party stating a claim under the Act does not have to establish all elements of fraud, because the Act prohibits the making of any deceptive or false promises, including innocent misrepresentations.  
Century Universal
, 158 Ill. App. 3d at 198; 
Duhl
, 102 Ill. App. 3d at 495.  In addition, the Act does not require that the complaining party prove actual reliance.  
Siegel
, 153 Ill. 2d at 542.

The Act does not apply to every transaction between contracting parties (
Century Universal
, 158 Ill. App. 3d at 198; 
Christensen v. Numeric Micro, Inc.
, 151 Ill. App. 3d 823, 503 N.E.2d 558 (1987)), nor to every commercial transaction, regardless of the relationship between the parties.  
Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.
, 275 Ill. App. 3d 452, 459, 654 N.E.2d N.E.2d 1109 (1995) (
Lake County
).  If the dispute involves two business entities that are not consumers, the proper test is "'whether the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.'"  
Lake County
, 275 Ill. App. 3d at 458, quoting 
Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.
, 190 Ill. App. 3d 524, 534, 546 N.E.2d 33 (1989) (
Downers Grove
).

In 
Downers Grove
, plaintiff alleged that defendant sent to plaintiff's customers and other car owners a brochure that falsely reported the prices plaintiff charged for automobile service inspections.  
Downers Grove
, 190 Ill. App. 3d at 526.  The court held that this conduct implicated consumer protection concerns and stated a claim under the Act.  
Downers Grove
, 190 Ill. App. 3d at 534.  
Lake County
, in contrast, held that a contractor could not sue its subcontractor under the Act, because "there is no inherent consumer interest implicated in a construction contract between a general contractor and a subcontractor."  
Lake County
, 275 Ill. App. 3d at 460.

The present case differs from 
Lake County
 in that the allegations relate to events other than the performance of the subcontract between Hartmann and Ross.  The fifth amended counterclaim alleges that before the execution of the subcontract, when Parkview was negotiating the purchase of the Irving Park property, Hartmann made representations regarding the cost of an environmental cleanup, and Parkview relied on these representations in conducting the negotiations.  Parkview further asserted in the counterclaim that had it known the actual cost of the cleanup, it would not have purchased the property.  

The making of allegedly deceptive statements to induce a party to purchase real property has been held actionable under the Act.  
Siegel
, 153 Ill. 2d at 544; 
Duhl
, 102 Ill. App. 3d at 495.  The Act has been applied to statements made by real estate brokers who misrepresented the value of property and the applicable mortgage rate (
Duhl
, 102 Ill. App. 3d at 495; 
Beard v. Gress
, 90 Ill. App. 3d 622, 413 N.E.2d 448 (1980)), and sellers who misrepresented a home's features (
Siegel
, 153 Ill. 2d at 544).  Similarly, here, Parkview alleges that Hartmann misrepresented the cost of removing environmental hazards from the Irving Park property in order to induce Parkview to purchase the property and authorize the subcontract with Hartmann.  Allegations that a party gave false information to a potential purchaser of real property implicates consumer protection concerns and states a claim under the Act.

III

Parkview contends that count III of its fifth amended counterclaim, which alleged negligent misrepresentation, was not barred by the 
Moorman
 doctrine.  This principle, also known as the economic loss doctrine, bars recovery in tort for a purely economic loss.  
Moorman Manufacturing Co. v. National Tank Co.
, 91 Ill. 2d 69, 435 N.E.2d 449 (1982).  Recovery is permitted, however, for claims that defendant intentionally made false misrepresentations, or negligent misrepresentations if defendant is in the business of supplying information for the guidance of others in their business transactions.  
Moorman
, 91 Ill. 2d at 89-91. 

In 
2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel, & Frazier, Ltd.
, 136 Ill. 2d 302, 555 N.E.2d 346 (1990), the supreme court discussed the latter exception:

"'a great many businesses involve an exchange of information as well as of tangible products ***.  But if we ask what the product is in each of these cases, it becomes clear that the product *** is not itself information, and that the information provided is merely incidental.'"  
136 Ill. 2d at 313, quoting 
Rankow v. First Chicago Corp.
, 870 F.2d 356, 364 (7th Cir. 1989).

In 
Congregation of the Passion, Holy Cross Province v. Touche Ross and Co.
, 159 Ill. 2d 137, 636 N.E.2d 503 (1994) (
Congregation
), the court further explained that the 
Moorman
 doctrine applied to the service industry if the duty of the party performing the service was defined by the contract; if a duty arose independently of the contract, the economic loss doctrine would not prohibit a tort action for the negligent breach of that duty.  
Congregation
, 159 Ill. 2d at 162.

Citing 
Congregation
, Parkview alleges that Hartmann owed an independent duty to Parkview during the time the parties conducted negotiations.  In contrast to the accountant in 
Congregation
, however, the information provided by Hartmann was incidental to its contractual duty to remove and dispose of environmental waste on the Irving Park property.  The negligent misrepresentation exception to the economic loss doctrine does not apply in this case.

Parkview asserts that the doctrine itself is inapplicable here because it was not a party to the contract between Hartmann and Ross.  This argument is disingenuous in light of the fact that two of the four shareholders of Parkview also headed Ross and therefore were parties to the contract with Hartmann, albeit in a different capacity.  In addition, as the owner of the subject property, Parkview directly benefitted from the performance of the subcontract, and at least one of its shareholders negotiated and signed the subcontract.  Parkview therefore can be considered a third party beneficiary to the contract between Ross, the general contractor, and Hartmann, the subcontractor.  
Paukovitz v. Imperial Homes, Inc.
, 271 Ill. App. 3d 1037, 1039, 649 N.E.2d 473 (1995).
  Count III of counterplaintiffs' fifth amended counterclaim was properly dismissed.

IV

The final issue raised in this appeal is whether the individual counterplaintiffs and Ross had standing to file a counterclaim against Hartmann.  The circuit court struck all counterplaintiffs, with the exception of Parkview,  from the fourth amended counterclaim, and granted only Parkview leave to file the fifth amended counterclaim.  Ross and the four individual counterplaintiffs seek authority to rejoin Parkview in the counterclaim.  In their brief, however, counterplaintiffs discuss only the four individuals, and raise no arguments in favor of Ross.  Any challenge to the striking of Ross as a counterplaintiff therefore is waived.  155 Ill. 2d R. 341(e)(7).  

Counterplaintiffs assert that they should be permitted to file a counterclaim because they are the sole shareholders of Parkview, and were forced to guarantee loans personally on behalf of the corporation.  Counterplaintiffs did not allege the existence of this personal obligation in any of their amended counterclaims.  Counterplaintiffs are not the proper parties to sue for damages sustained by Parkview, or by counterplaintiffs as its shareholders.  Shareholders of a corporation who are injured as a result of the diminution in value of their shares may not recover directly for their losses, but must seek recovery indirectly on behalf of the corporation.  
Kennedy v. First National Bank of Decatur
, 129 Ill. App. 3d 633, 637, 473 N.E.2d 604 (1985).  Counterplaintiffs therefore must seek recovery from Hartmann through Parkview, the corporate entity.

Hartmann argues that Parkview also lacked standing to file a counterclaim because it was incorporated shortly after the alleged misrepresentations were made.  The fifth amended counterclaim states that Beaulieu, one of the individual counterplaintiffs, was president and a shareholder of Parkview, and negotiated with Hartmann on behalf of Parkview before its incorporation.  Beaulieu would have been acting as Parkview's agent when negotiating with Hartmann.  Moreover, Parkview ratified Beaulieu's conduct by accepting the benefits of the transaction with Hartmann, allowing Hartmann to continue working on the subject property after Parkview assumed ownership.  
H.F. Philipshorn & Co. v. Morris Susan
, 59 Ill. 2d 465, 471-72, 322 N.E.2d 45 (1974).  
Parkview therefore had standing to sue Hartmann.

For the foregoing reasons, the circuit court's order granting Hartmann's motion to dismiss counts I and II of Parkview's fifth amended counterclaim is reversed, the dismissal of count III is affirmed, and the dismissal of Korshak, Beaulieu, Pontarelli, Miniscalco, and Ross from the fourth amended counterclaim is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.

HOFFMAN, P.J., and THEIS, J., concur.