FIFTH DIVISION

1-98-1064 SEPTEMBER 10, 1999

ROBERT F. COLEMAN, as Principal of ) Appeal from the

ROBERT F. COLEMAN & ASSOCIATES, a Sole ) Circuit Court of

Proprietorship, ) Cook County.

)

Plaintiff-Appellant, )

)

v. ) 

)

MADISON TWO ASSOCIATES, a Texas General ) 

Partnership; MADISON ASSOCIATES, a )

Texas General Partnership; HINES )

CHICAGO ASSOCIATES LIMITED, a Texas ) 

Limited Partnership; NCNB NATIONAL BANK )

OF NORTH CAROLINA, N.A., a North )

Carolina Banking Corporation; )

NATIONSBANK OF NORTH CAROLINA, N.A., a )

North Carolina Banking Corporation; and )

NATIONBANC SERVICES, INC., a North )

Carolina Banking Corporation, ) Honorable

) Lester D. Foreman,

Defendants-Appellees. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Robert F. Coleman sought a declaratory judgment against, and monetary damages from, the following defendants:  Madison Two Associates (Madison Two), the owner of the building in which plaintiff's law firm subleased office space; Hines Chicago Associates (Hines), Madison Two's managing partner; and NCNB National Bank, NationsBank and Nationbanc Services (collectively, NCNB), the prime leaseholder and plaintiff's sublessor.  Plaintiff appeals the dismissal of his amended complaint, as amended, claiming that 
(1) NCNB breached its sublease with him in failing to give him proper notice of early termination of its "Underlying Lease" with Madison Two, its lessor; (2) the sublease and its consents to sublease required that Madison Two demand attornment as a condition precedent to termination of the sublease; and, alternatively, (3) Madison Two's letter proposing a new lease term was a demand for attornment which plaintiff accepted.

The record reflects that on June 30, 1986, NCNB leased space on the 56th floor of the building known as "Three First National Plaza" (Building) from Madison Associates, then owner of the Building.  On March 19, 1990 and on June 20, 1990, Madison Two, as successor in interest to Madison Associates, and NCNB executed two amendments to the Underlying Lease.  The first amendment added property located on the 20th floor of the Building to the Underlying Lease and then substituted the original property on the 56th and 20th floors with property located on the 53rd floor.  The second amendment stated, "[t]he New Premises [on the 53rd floor] shall be substituted for the Original Premises [on the 56th and 20th floors] and all references in the Lease to the term 'leased premises' shall be deemed to be to the New Premises."  The second amendment further provided:

"Either Landlord or Tenant may elect to terminate the Lease effective as of May 1, 1998 ("Early Termination Date") by giving not less than twelve (12) months' prior written notice to the other, in which case the Lease shall terminate on the Early Termination Date."

On February 15, 1991, NCNB sublet office space on the 53rd floor of the building to plaintiff, that term to commence on March 1, 1991, and end on September 30, 2000, "or on such earlier date upon which said term may expire or be canceled or terminated pursuant to any of the conditions or covenants of this Sublease or the Underlying Lease or pursuant to law."  The sublease also provided that it would "be subject and subordinate to all of the terms, covenants, conditions and provisions of the Underlying Lease.  
Copies of the Underlying Lease have been delivered to and examined by Sublessee and made part of this Sublease Agreement
."  (Emphasis in original.)  Pursuant to the terms of the sublease, communications and notices between NCNB and plaintiff were required to "be in writing and by phone facsimile simultaneously and shall be given or made by registered or certified mail."  The sublease further provided that "Sublessor shall, no later than three (3) days after receipt thereof, give to Sublessee a copy of each notice and demand received from the Underlying Landlord concerning the Subleased premises and shall within such time give to the Underlying Landlord a copy, or the substance of, each notice and demand received from Sublessee concerning the Subleased Premises."

Madison Two (through Hines), NCNB and plaintiff then entered into an agreement entitled "Consent to Sublease."
(footnote: 1)  On January 3, 1995, NCNB and plaintiff amended the sublease, adding additional space adjacent to the original premises, extending the term of the sublease through February 28, 2001, and also providing that "[e]xcept as hereto amended, the Sublease will continue in full force and effect in accordance with its terms.  This Amendment shall not affect or limit Sublessor's early termination rights under the Underlying Lease."  Plaintiff, NCNB and Madison Two (through Hines) executed a second "Consent to Sublease" which contained virtually the same language as the first "Consent to Sublease."  

On January 15, 1997, NCNB notified Madison Two of its intention to "exercise[] its right to an early termination to be effective May 1, 1998," reminding Madison Two that it was "currently subleasing this space to [plaintiff] and, via a copy of this letter, [were] notifying him of [its] intention to proceed with this early termination."  Notwithstanding the letter's statement that a copy was sent to plaintiff, he alleges that he never received notice of NCNB's intent to terminate early the Underlying Lease with Madison Two. 

Several months later, in the Spring of 1997, plaintiff met with representatives of Hines to discuss leasing from Madison Two additional space on the 53rd floor.  Hines agreed to present the additional space, which was leased to another, when, and if, it became available.  At this time, Hines did not inform plaintiff that NCNB had opted for early termination of the Underlying Lease. Rather, Hines suggested that, should the additional space become available, Madison Two might be interested in restructuring plaintiff's sublease as a direct lease covering both the subleased premises and the additional space for a five-year term.

Plaintiff claims that it was not until about September 15, 1997, that he first learned of NCNB's intention to end the Underlying Lease on the early termination date, information which came from Theodore J. Minorini, Hines' representative.  Minorini gave plaintiff a copy of NCNB's January 15, 1997 letter.  On September 16, 1997, in a letter to plaintiff signed by Minorini, Hines submitted a "lease proposal."  The letter continued, "[a]s you have requested I have given you two options with the 
[first] being subject to an existing tenant's rights."  The "lease proposal," which was attached to the letter, set forth the two "options":  the first option covered leased premises currently occupied by another tenant and was contingent on that tenant "not electing to renew its current lease"; the second option was for the premises already occupied by plaintiff.  The "lease proposal" further specified a term for "[f]ive (5) years commencing May 1, 1998."  Hines' "proposal" also contained the following "qualifications":  it was "non-binding," valid for only thirty days, could be withdrawn at any time without notice by Madison Two, and was not "legally" binding "until such time as both parties formally execute and deliver a lease document."

On about October 8, 1997, plaintiff notified Minorini that he accepted Hines' offer without qualification or modification; however, Minorini telephoned plaintiff on October 17, 1997, advising him that Madison Two had decided to lease the premises occupied by plaintiff to another tenant, a financial institution, currently leasing space on the 53rd floor contiguous to plaintiff's premises.  In an October 28, 1997 letter, Hines responded to plaintiff that its "lease proposal" was not a "demand" for attornment; and notified plaintiff that it "had not made such election or demand" to attorn.  Nevertheless, Hines' letter reminded plaintiff that it had "suggested alternative space in the building to suit [plaintiff's] needs" and indicated its willingness to discuss that alternative.  Hines also suggested that any issues concerning the sublease should be directed to NCNB, plaintiff's sublessor.

On November 5, 1997, plaintiff filed suit against the several defendants, alleging five grounds for declaratory relief:  (1) the early termination clause contained in NCNB's Underlying Lease with Madison Two did not cover the premises on the 53rd floor; (2) NCNB's notice of early termination was from an entity entitled "NationsBank Services" and therefore did not comport with the Underlying Lease requirements; (3) Hines' September 16, 1997 letter containing the "lease proposal" was, in reality, a demand to attorn which plaintiff accepted; (4) alternatively, if the letter was not a demand to attorn, both "consent to sublease" agreements required that plaintiff be given the opportunity to attorn before the sublease could terminate early; and (5) alternatively, if Madison Two had discretion to demand attornment from plaintiff, it breached its covenant of "good faith and fair dealing" by exercising that discretion arbitrarily and capriciously."  Plaintiff's complaint sought only declaratory relief to prevent the termination of his sublease.

Thereafter, Madison Two and NCNB both moved to dismiss plaintiff's complaint.  On January 17, 1998, the circuit court granted both motions without prejudice, with leave to file an amended complaint.  On February 17, 1998, plaintiff filed his amended complaint, which was substantially the same as his original complaint, adding only a second count which sought damages from NCNB for "failing to give plaintiff prior notice of early termination when it gave notice to the prime landlord," thereby breaching its "obligation to 'use its best efforts * * * to assist in relations with the Underlying Landlord.'"  After filing his amended complaint, plaintiff also was granted leave to amend by including a request for damages in excess of the minimum jurisdictional amount.  Following argument, the court dismissed plaintiff's amended complaint, as amended, for failure to state a cause of action, from which plaintiff appeals.
(footnote: 2)
Under section 2-615, no action should be dismissed on a motion for failure to state a cause of action unless it clearly appears that no set of facts can be proved under the pleadings which will entitle plaintiff to relief.  735 ILCS 5/2-615 (West 1996);  
People ex rel. Daley v. Datacom Systems Corp.
, 146 Ill. 2d 1, 11, 585 N.E.2d 51 (1991).  For the purpose of such a motion, all well-pleaded facts in the complaint are admitted as true, together with all reasonable inferences which may be drawn from them.  
Peter J. Hartmann Co. v. Capital Bank & Trust Co.
, 296 Ill. App. 3d 593, 600, 694 N.E.2d 1108 (1998);  
Barille v. Sears Roebuck & Co.
, 289 Ill. App. 3d 171, 174, 682 N.E.2d 118 (1997).  The dismissal of a complaint with prejudice under section 2-615 involves a question of law as to whether the complaint sets forth facts which, if true, would entitle plaintiff to relief; accordingly, the standard of review of the circuit court's dismissal is 
de
 
novo
.  
Peter J. Hartmann Co.
, 296 Ill. App. 3d at 600; 
Barille
, 289 Ill. App. 3d at 174.

I

Plaintiff initially contends the circuit court erred in dismissing his complaint because NCNB breached its contractual duty to give him "proper and timely" notice of NCNB's exercise of its right to early termination.  Plaintiff also premises NCNB's "duty" on the sublease requirement that NCNB "use its best efforts to assist in relations with the landlord."  NCNB responds that neither the sublease nor the Underlying Lease expressly required it to tender notice of early termination to its subtenant, plaintiff.

The second amendment to the Underlying Lease between Madison Two and NCNB provided that "[e]ither Landlord or Tenant may elect to terminate the Lease, effective as of May 1, 1998 ("Early Termination Date"), by giving not less than twelve (12) months' prior written notice to the other."  Although not disputing the validity of NCNB's election, plaintiff maintains that the sublease required NCNB to give 12 months' notice of its election to plaintiff as well as Madison Two, pointing to a provision in the sublease which, he argues, requires NCNB to give him a copy of 
any
 notice 
between
 Madison Two and NCNB within three days of its receipt or issuance. 

The portion of the sublease upon which plaintiff relies provides that "Sublessor shall, no later than three (3) days after receipt thereof, give to Sublessee a copy of each notice and demand 
received from the Underlying Landlord
 concerning the Subleased premises and shall within such time give to the Underlying Landlord a copy, or the substance of, each notice and demand 
received from Sublessee
 concerning the Subleased Premises."  (Emphasis added.)  Plaintiff relies further upon a sublease provision which requires all notices and communications between NCNB and plaintiff "to be in writing and by phone facsimile simultaneously," contending that the sublease imposed upon NCNB the additional express duty to give 12 months' written notice to plaintiff as to its election of early termination.

NCNB responds, however, that because it did not 
receive
 the notice of early termination from Madison Two, but 
sent
 it to Madison Two, it had no obligation to tender such notice to plaintiff within the parameters of time set out in the sublease.  NCNB insists that it was required only to tender to plaintiff "a copy of each notice and demand 
received from the Underlying Landlord
 concerning the Subleased premises"; because the notice of early termination was not 
received from
 Madison Two, but was 
tendered to
 Madison Two, NCNB argues that it was under no contractual obligation to supply plaintiff with a copy of its notice to Madison Two.

Although the Underlying Lease between Madison Two and NCNB requires that NCNB give 12 months' notice of its election only to Madison Two, plaintiff's sublease specifically makes reference to and incorporates the terms of the Underlying Lease.  The sublease expressly states that "copies of the Underlying Lease have been delivered to and examined by Sublessee and made part of this Sublease Agreement."  Granted, a sublessee possesses neither privity of estate nor privity of contract with the landlord (
Arendt v. Lake View Courts Associates
, 51 Ill. App. 3d 564, 566, 366 N.E.2d 1096 (1977) (
Arendt
)), and the sublessee holds its estate "subject to" the terms of an original lease, nevertheless a sublease may contain terms, stronger than the "subject to" language, such as a clause specifically incorporating certain provisions of the original lease.  See, 
e.g.
, 
Wright v. Mr. Quick, Inc.
, 109 Ill. 2d 236, 240, 486 N.E.2d 908 (1985).
  Such incorporation of terms and covenants was undertaken here, by virtue of the following language in the sublease:

"The terms, covenants, conditions and provisions except renewal options (if any) contained in the Underlying Lease (including, but not limited to the remedies provided thereunder) 
are incorporated herein by reference, and shall, as between Sublessor and Sublessee[,] constitute the terms, covenants, conditions and provisions of this Sublease
, except to the extent that they are inapplicable to, inconsistent with, or modified by the provisions of this instrument.  
The parties agree to observe and perform the terms, covenants, conditions, and provisions on their respective parts to those terms, covenants, conditions and provisions of the Underlying Lease which are incorporated herein
."  (Emphasis added.)

No reason has been advanced which demonstrates any inapplicability or inconsistency of notice to the landlord of early termination in the Underlying Lease when compared to the sublease.

By designating the "terms, covenants, conditions and provisions" already in place between Madison Two and NCNB as those which govern the sublease between NCNB and plaintiff, the sublease imposed on NCNB the same obligation to "observe and perform the terms, covenants, conditions, and provisions *** of the Underlying Lease" terms, which prescribed that NCNB give plaintiff at least 12-months' notice of early termination as NCNB would have been required to give Madison Two.  The circuit court's dismissal of plaintiff's amended complaint, insofar as it seeks monetary damages for breach of the sublease by NCNB, was reversible error.

Plaintiff also argues that the sublease obligated NCNB to "use its best efforts *** to assist in relations with the Underlying Landlord," and insists that NCNB breached this duty when it failed to advise him prior to, or at least contemporaneously with, its notification to Madison Two of its election.  NCNB responds that the "best efforts" clause upon which plaintiff relies is legally insufficient to create an independent duty on the part of NCNB to provide plaintiff with written notice of early termination, particularly when the plain and unambiguous language of the sublease fails to impose such a duty upon NCNB.
(footnote: 3)  Plaintiff maintains that the subject clause establishes an independent duty and obligation on NCNB to use its best efforts to facilitate communication between him and Madison Two.

A "best efforts" undertaking is similar to the exercise of good faith implied in all contracts.  
Grant v. Board of Education
, 282 Ill. App. 3d 1011, 1024, 668 N.E.2d 1188 (1996) (
Grant
).  Although the question of whether a party has satisfied its "best efforts" or good faith obligation is one of fact (
Grant
, 282 Ill. App. 3d at 1025), notions of fair dealing and good faith by themselves do not form the basis for tort relief.  
Anderson v. Burton Associates, Ltd.
, 218 Ill. App. 3d 261, 267, 578 N.E.2d 199 (1991) (
Anderson
).
  The obligation of good faith and fair dealing primarily is used to determine the intent of the parties where a contract is susceptible to two conflicting constructions.  
Northern Trust Co. v. VIII S. Michigan Associates
, 276 Ill. App. 3d 355, 367, 657 N.E.2d 1095 (1995) (
Northern Trust
).  Parties to a contract are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot override or modify the express terms of that contract.  
Northern Trust
, 276 Ill. App. 3d at 367.

Here, the terms of the Underlying Lease were specifically incorporated into the sublease as agreed to by all parties.  The sublease specifically required that NCNB use its "best efforts" to assist in "relations" between plaintiff and Madison Two.  The Underlying Lease, to which the sublease was subordinate, set forth, with specificity, NCNB's notice requirements as to Madison Two.  The "best efforts" and "assistance" clauses permit the construction of the sublease sought by plaintiff, that timely notice of NCNB's election to terminate early its Underlying Lease with Madison Two would have enabled plaintiff to begin his negotiations directly with Madison Two prior to the time that Madison Two would have needed to seek other parties to take over the subject space.  Plaintiff should have been allowed to pursue this theory at trial as well.

II

Plaintiff next asserts that Madison Two breached the consents to sublease when it allowed the early termination of the lease and resultant termination of the sublease without first giving plaintiff his "right" to attorn.  Specifically, plaintiff maintains that both consents to sublease required that Madison Two give plaintiff the right to attorn as a condition precedent to termination of the sublease.  Madison Two responds that the language contained in the consents to sublease expressed an "exception" to early termination rather than a condition precedent.
(footnote: 4)
Although plaintiff maintains that the proviso, "provided,  however," indicates a condition precedent, the entire language of the above-quoted portion of the consents to sublease reflects otherwise.  
Compare 
World Secret Service Association, Inc. v. The Travelers Indemnity Co.
, 55 Tenn. App. 122, 396 S.W.2d 848, 851 (1965) (the words, "provided, however," are "recognized words of art" establishing a condition precedent) with 
In re Livingston's Estate
, 220 N.Y.S.2d 434, 436, 14 A.D.2d 264 (1961) ("the words, 'provided, however,' are deemed to denote the expression of a limitation or exception").

 The phrase, "provided, however, that [plaintiff] 
agrees
, at the 
election
 and upon 
written demand
 of [Madison Two] to attorn," operates as an exception to the simultaneous termination of the lease and sublease only if Madison Two elected and in writing demanded attornment to which plaintiff agreed.  There was no such election or written demand made here to which plaintiff effectively could have agreed.

Plaintiff also identifies a Madison Two breach of the "consents to sublease" provision because it did not present plaintiff with the opportunity to attorn, which plaintiff construes as his "right" to attornment.  The language expressly shows, however, that Madison Two had the option to "elect" and "demand" attornment; only in such case did plaintiff have the option to "agree" to attorn.  Because Madison Two chose not to exercise its option to elect and demand attornment, plaintiff's contractual opportunity to agree to attornment never materialized.

Plaintiff alternatively suggests that, even if Madison Two had unilateral discretion not to elect and demand attornment, it made its election in an arbitrary and capricious manner in violation of its duty to proceed in good faith.
(footnote: 5)  Madison Two counters that its decision to lease to a financial institution, rather than to plaintiff, was neither capricious nor arbitrary.

Good faith between contracting parties requires one vested with contractual discretion to exercise it reasonably and not arbitrarily or capriciously; parties to a contract impliedly promise to do nothing which will destroy or injure the other party's right to receive the fruits of the contract.  
Grant
, 282 Ill. App. 3d at 1025.  Although this "obligation" exists in every contract in Illinois
, essentially it is used as a construction aid in determining the parties' intent; vague notions of fair dealing and good faith do not form the basis for an individual tort.  
Anderson
, 218 Ill. App. 3d at 267.
  The obligation of good faith and fair dealing, therefore, is utilized to determine the intent of the parties where a contract is susceptible to two conflicting constructions.  
Northern Trust
, 276 Ill. App. 3d at 367.  Parties to a contract, however, are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot override or modify the express terms of that contract.  
Northern Trust
, 276 Ill. App. 3d at 367.  Here, the consents to sublease made eminently clear that Madison Two had the discretion to demand attornment.  The consents to sublease clearly notified plaintiff that Madison Two also had the option, upon termination of the lease, not to elect or demand attornment; plaintiff was not entitled to attornment as a matter of right.  

Accordingly, that part of plaintiff's complaint, which alleged that Madison Two breached its duty of good faith and fair dealing, properly was dismissed by the circuit court.

III

Plaintiff lastly contends, alternatively, that Minorini's September 16, 1997 letter expressed, in essence, Madison Two's demand to attorn, to which plaintiff agreed.  Madison Two responds that the letter from Minorini was merely a new "lease proposal," which was non-binding and was timely withdrawn.

The September 16, 1997 letter began, "[o]n behalf of Hines, I am pleased to submit a lease proposal to your firm for space at Three First National Plaza."  That letter then provided plaintiff with two "options"
 set forth in the "lease proposal" document, which was attached to letter.  The first option covered leased premises which were currently occupied by another tenant and was contingent on that tenant "not electing to renew its current lease."   The second option was for the premises already occupied by plaintiff.  The "lease proposal" further specified a term for "[f]ive (5) years commencing May 1, 1998."  The "proposal" also contained the following "qualifications":  it was "non-binding," was valid for only thirty days, could be withdrawn at any time without notice by Madison Two, and was not "legally" binding "until such time as both parties formally execute and deliver a lease document."

Although plaintiff insists that the letter operated as a demand for attornment, a review of the contents of that letter and the attached "lease proposal" demonstrate that the letter falls far short of a demand for attornment.  An attornment is a continuation of the existing lease under the same conditions and continues the landlord-tenant relationship "under the term of the original tenancy."  
Arendt
, 51 Ill. App. 3d at 566-67; 
Oswald v. Mollet
, 29 Ill. App. 449, 453 (1888).

Despite the clear language of the letter and the "proposal," plaintiff insists that a question of fact remains as to Minorini's intent in writing the letter and, therefore, the circuit court erred in dismissing his amended complaint, as amended.  Plaintiff argues that he should be given the opportunity to present extrinsic evidence as to Minorini's (and therefore, Madison Two's) intent.

The letter, however, clearly was a "lease proposal" and not a "demand for attornment."  Moreover, the content of the letter establishes that it could be withdrawn, and was not "legally" binding until a lease was formally executed.  These conditions are inconsistent with attornment.  Accordingly, the circuit court did not err in dismissing this asserted ground for recovery.

The circuit court erred in dismissing plaintiff's claim against NCNB insofar as damages are alleged, where the language of the Underlying Lease was expressly incorporated into the sublease thereby obligating NCNB to notify plaintiff of its intent to exercise early termination of its Underlying Lease with Madison Two.  The court properly dismissed plaintiff's claims against Madison Two where the consents to sublease did not require Madison Two to afford plaintiff attornment as a condition precedent to early termination of the sublease.

Reversed in part, affirmed in part, and remanded for further proceedings.

GREIMAN and HOURIHANE, JJ., concur.

FOOTNOTES
1:
The consent to sublease provided, in part:

"If, at any time prior to the expiration of the term of the Sublease, the Prime Lease shall terminate or be terminated for any reason, the Sublease shall also simultaneously terminate; provided, however, that Subtenant agrees, at the election and upon written demand of Landlord, to attorn to the Landlord upon the then executory terms and conditions set forth in the Sublease for the remainder of the term of the Sublease.  The foregoing provisions of this paragraph shall apply notwithstanding that, as a matter of law, the Sublease may otherwise terminate upon the termination of the Prime Lease, and shall be self-operative upon such written demand of the Landlord and no further instrument shall be required to give effect to said provisions.  Upon demand of the Landlord, Subtenant agrees, however, to execute, from time to time, documents in confirmation of the foregoing provisions of this paragraph, satisfactory to the Landlord, in which Subtenant shall acknowledge such attornment and shall set forth the terms and conditions of its tenancy.  Nothing contained in this paragraph shall be construed to impair or modify any right otherwise exercisable by the Landlord, whether under the Prime Lease or any other agreement."

2:
Plaintiff no longer seeks declaratory judgment; he has since vacated the Building and has found alternative office space.  He continues to seek damages.

3:
The sublease in the instant case contained the following clause, entitled "Sublessor's Approval":

"Whenever pursuant to this Sublease, Sublessee shall request Sublessor's consent or approval, such consent or approval shall not be unreasonably withheld or delayed, provided that Sublessor's refusal to consent to or approve any matter or thing, whenever Sublessor's consent or approval is required or requested under this Sublease or under the Underlying Lease, shall be deemed reasonable, if 
inter
 
alia
 the Underlying Landlord has refused to give such consent or approval.  Sublessor will use its best efforts (not to include litigation against the Underlying Landlord) to assist in relations with Underlying Landlord."

4:
In the case at bar, the language of the consents to sublease provided, in part,

"If, at any time prior to the expiration of the term of the Sublease, the Prime Lease shall terminate or be terminated for any reason, the Sublease shall also simultaneously terminate; 
provided, however, that Subtenant
 
agrees, at the election and upon written demand of Landlord
, to attorn to the Landlord upon the then executory terms and conditions set forth in the Sublease for the remainder of the term of the Sublease.  The foregoing provisions of this paragraph shall apply notwithstanding that, as a matter of law, the Sublease may otherwise terminate upon the termination of the Prime Lease, and shall be self-operative upon such written demand of the Landlord and no further instrument shall be required to give effect to said provisions." (Emphasis added.)

5:
In a footnote, plaintiff also asserts that Madison Two's "acceptance" of notice from NCNB, which did not "comply with the terms of the Second Amendment to Lease," violated its duty of good faith and fair dealing.  Plaintiff cites no authority for his position and, therefore, this argument will not be considered.  See 177 Ill. 2d R. 341.