FIFTH DIVISION

JUNE 30, 2000

1-99-2871

DONALD J. POCHOPIEN, ) Appeal from the 

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. )

) No. 98 CH 14889

MARSHALL, O'TOOLE, GERSTEIN, ) 

MURRAY & BORUN, an Illinois ) 

partnership, ) Honorable

) Ronald Riley,

Defendants-Appellees. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Donald J. Pochopien appeals from the circuit court's order granting defendant Marshall, O'Toole, Gerstein, Murray & Borun's (Marshall) motion to dismiss with prejudice his verified complaint for declaratory judgment and other relief against Marshall, an Illinois law firm, involving alleged violations of  Marshall’s partnership agreement (Agreement).  

Pochopien raises as issues on appeal whether the circuit court erred in granting Marshall's section 2-619 motion and dismissing (1) count I of Pochopien's verified complaint with prejudice because: (a) section 8-5 of the Agreement allegedly imposes a financial disincentive for Pochopien to practice law at any firm other than Marshall; and (b) Marshall selectively enforced paragraph 8-5 against Pochopien; and (2) dismissing count II of Pochopien's verified complaint with prejudice where Marshall allegedly waived its right to enforce paragraph 8-5 against Pochopien.  

Pochopien's two-count verified complaint alleged facts which follow.  Pochopien is an attorney licensed to practice law in Illinois.  Marshall is an Illinois partnership with its principal place of business in Chicago, Illinois.  On January 1, 1995, Pochopien and Marshall entered into a written contract entitled "Partnership Agreement of Marshall, O'Toole, Gerstein, Murray & Borun," a copy of which was attached to the complaint.  Pochopien performed legal services for Marshall's clients pursuant to the terms of the Agreement.  During that time Pochopien made various contributions totaling some $71,477  to the capital partnership account, as defined in Article VII, paragraph 7-2 of the Agreement.
(footnote: 1) 

On July 2, 1997, Pochopien gave Marshall 30 days' notice in writing of his intended withdrawal from the Marshall partnership in accordance with paragraph 8-2 of the Agreement.   

After Pochopien's withdrawal from the partnership, Marshall withheld from him about $47,680, for the year following his departure.  This amount represented a deduction for Pochopien's share of Marshall's lease obligation, which Marshall continues to withhold, on the basis that paragraph 8-5 of the Agreement allows this reduction in the amounts owed to Pochopien from his capital account.  Pochopien made a demand upon Marshall to pay him the full amount of his capital account, which Marshall refused.  Pochopien received distributions from Marshall on August 12, 1997 and September 12, 1997.  No deduction for his proportionate share of the lease for Marshall's office space for the month of August 1997 was made.  Pochopien alleges that paragraph 8-5 is void because it contravenes Rule 5.6 of the Illinois Code of Professional Conduct (Rule 5.6), as well as the public policy underlying Rule 5.6.
(footnote: 2) 

Pochopien further alleged that Marshall selectively enforced paragraph 8-5 against attorneys withdrawing to practice law at other law firms, but not against attorneys moving to corporations (
i.e.
, prospective clients), using paragraph 8-5 as a restriction in fact of an attorney's right to practice law, and as a disincentive for Pochopien to practice law at any firm other than Marshall.  Pochopien also alleged that in about February 1994, Marshall waived enforcement of paragraph 8-5 against departing partner, Lewis Gruber, who joined Hyseq, Inc., and in February or March 1998, Marshall allegedly waived enforcement of paragraph 8-5 against departing partner, Kevin Hogg, who joined Proctor and Gamble.  Also, in about 1998, Marshall allegedly waived enforcement of paragraph 8-5 against departing partner, Cynthia Schaller, who ceased practicing law in order to enter divinity school.

In count I of his complaint, Pochopien requested that the circuit court declare his and Marshall's rights and liabilities pursuant to the Agreement; enter a finding that paragraph 8-5 of the Agreement violates Rule 5.6 and is void and unenforceable; enter an award of money damages in his favor against Marshall in an amount equal to the amount of his entire capital account without any deduction or reductions; enter an award of interest on any judgment entered in his favor against Marshall pursuant to section 2-1303 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1303 (West 1996)); enter an award of costs in his favor against Marshall  pursuant to section 2-701 of the Code (735 ILCS 5/2-701 (West 1996)) and any further relief deemed just and proper.

In count II, Pochopien claimed that Marshall has waived any claim to deduct any amounts under paragraph 8-5, through its actions in waiving enforcement of Agreement paragraph 8-5 against departing partners, Lewis Gruber, Kevin Hogg, and Cynthia Schaller, and through its making distributions to him for August and September without deducting any monies for his proportionate share of the lease for office space for the month of August 1997.  Count II sought the same relief requested in count I, except that instead of seeking a finding that Agreement paragraph 8-5 violates Rule 5.6 and is void and unenforceable, Pochopien prayed that the circuit court enter a finding that defendant has waived enforcement of  paragraph 8-5.  

On January 6, 1999, Marshall moved to dismiss Pochopien's verified complaint for declaratory judgment and other relief pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 1996) (sections 2-615, 2-619)) with a supporting memorandum.  Marshall contended that Agreement paragraph 8-5 of the does not restrict Pochopien's right to practice law and therefore does not violate Rule 5.6, and affirmative matter establishes that Marshall had not waived or discriminatorily enforced paragraph 8-5 as to Pochopien.    

Marshall's motion to dismiss was further supported by the affidavit of Carl Moore, Chairman of Marshall's management committee, who expressly averred:  lease payments were withheld from a distribution made to Pochopien on September 17, 1997, and from subsequent monthly distributions; the reason for not deducting Pochopien's proportionate share of the firm's lease obligations from his August 1997 and September 12, 1997 distributions is that Marshall was in the process of determining the amount of those  obligations and wanted to ensure that he received all amounts to which he was entitled; even after the August 1997 and September 12, 1997 distributions, Marshall retained sufficient amounts in Pochopien's  capital account, plus future collections to which he would be entitled, to meet his lease obligations for one year; and, by making the August and September 12, 1997 distributions, Marshall did not intend to waive or believe it was waiving its right to enforce the lease payment obligations of paragraph 8-5.

Moore averred also that Hogg withdrew from the Marshall partnership in 1998 and became an in-house counsel for Proctor and Gamble, a Marshall client; Schaller withdrew from the Marshall partnership in 1998 and entered divinity school; Marshall did not waive paragraph 8-5 with respect to Hogg or Schaller as both Hogg and Schaller each fulfilled their one-year lease payment obligations in full, with Marshall assuming any liability of Hogg and Schaller lease obligations after the year; before Pochopien withdrew from the Marshall partnership, only one other partner had withdrawn from the partnership, Jeffrey Smith, who withdrew on June 1, 1997, who also fulfilled his lease obligations in full.  Marshall assumed any liability of Smith for lease obligations after the one year.

Moore further averred that Marshall did not waive enforcement of Agreement paragraph 8-5 when another partner, Lewis Gruber, withdrew from Marshall prior to Pochopien's departure from Marshall; Gruber was a party to an earlier partnership agreement containing language substantially similar to that of paragraph 8-5; Gruber withdrew from partnership with Marshall in 1994 to become president of Hyseq, Inc., a Marshall client; in an effort to retain Hyseq, Inc. as a client and to obtain additional legal work, Marshall "made the legitimate and sound business decision not to require Gruber to make any lease payments after he withdrew from the partnership;" however, Marshall never assumed any of Gruber's liability for future lease obligations. 

In his deposition, Moore testified that Marshall chose not to enforce the forfeiture provision of paragraph 8-5 against Gruber because the latter left Marshall to become president and chief executive officer of Hyseq, Inc., a "significant firm client," the arrangement with Gruber being "a 
quid
 
pro
 
quo
," whereby he received his post-withdrawal distributions without a pro-rata deduction for rent but, in exchange, he remained liable subsequently as a guarantor on Marshall's office lease.  According to Moore, the firm felt it had no alternative but to grant Gruber's request as to the rent obligation  in light of his position with their client.  

On July 9, 1999, following a hearing, the circuit court entered its order granting Marshall's motion and dismissing with prejudice Pochopien's complaint in its entirety under section 2-

619.  This appeal followed.

I

Pochopien first contends that the circuit court erred in dismissing count I of his complaint under section 2-619 because, on its face, paragraph 8-5 of the Agreement imposes a financial disincentive for him to practice law at any firm other than Marshall; therefore, it is an indirect restraint on an attorney's right to practice law, violating the language of and the public policy underlying Rule 5.6.

A section 2-619 motion to dismiss is expected to raise defects or defenses that negate a cause of action or refute crucial conclusions of law or material fact that are unsupported by allegations of specific fact in the complaint.  
Peter J. Hartmann Co. v. Capital Bank and Trust Co.
, 296 Ill. App. 3d 593, 600, 694 N.E.2d 1108 (1998)
.  All well-pleaded facts in the complaint are admitted, together with all reasonable inferences gleaned from those facts, for a determination as to whether significant facts are contained in the pleadings, which, if established, would entitle the complainant to relief;
 
there should be no dismissal on the pleadings, unless it clearly appears no set of facts can be proved under the pleadings which will entitle the complainant to recover.  
Peter J. Hartmann Co.
, 296 Ill. App. 3d at 600
.  
Facts and evidence must be viewed in the light most favorable to the non-

moving party.  
Williams v. Board of Education of the City of Chicago
, 222 Ill. App. 3d 559, 562, 584 N.E.2d 257 (1991).  If it cannot be determined with reasonable certainty that the alleged defense exists, the motion should not be granted.  
Consumer Electric Co. v. Cobelcomex, Inc.
, 149 Ill. App. 3d 699, 703, 501 N.E.2d 156 (1986).  A section 2-619 motion is subject to 
de
 
novo
 review.  
Peter J. Hartmann Co.
,
 
296 Ill. App. 3d at 600
.  The question presented on appeal is "`whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.'"  
Zedella v. Gibson
, 165 Ill. 2d 181, 185-86, 650 N.E.2d 1000 (1995), quoting 
Kedzie & 103
rd
 Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).
 

Pochopien asserts that Marshall's position in this case is analogous to that taken by the defendant law firm in 
Katchen v. Wolff & Samson
, 258 N.J. Super. 474, 610 A.2d 415 (1992) (
Katchen
), since  on its face the forfeiture provision of paragraph 8-5 is applied equally against all withdrawing partners, with the exception of Lewis Gruber.  He argues that under Marshall's own construction, paragraph 8-5 is a blanket application of the financial disincentive provision, which is the type that the 
Katchen
 court characterized as "even more draconian" than the restriction in 
Jacob v. Norris, McLaughlin & Marcus
, 128 N.J. 10, 607 A.2d 142 (1992) (
Jacob
), the case upon which the 
Katchen
 court relied, which was applied only to those withdrawing attorneys who continued to represent the firm's clients.  
Katchen
, 610 A.2d at 419.  Pochopien misreads both the Agreement and the authorities upon whom he relies.

Paragraph 8-5 provides that, for one year following withdrawal, any withdrawing partner remains liable proportionately on Marshall's lease obligations for firm office space; in return, after the one-year period, the partnership assumes the withdrawing partner's remaining lease commitment, thereby obligating each partner to support its lease commitment for firm office space for only one year.  Paragraph 8-5 must be read together with paragraph 8-3(iv), which provides that, after withdrawing from the firm, a partner is entitled to receive "[t]he partner's share of participation in the firm's fee receipts collected 
after the date of withdrawal
 for services rendered by the firm prior to the date of withdrawal ***.  Any liability of a partner under paragraph 8-5 may first be satisfied from this share."  (Emphasis added.)  Under the Agreement, then, withdrawing partners continue to share in the firm's revenues and, as a corollary, also remain responsible for certain expenses 
e.g.
, the firm's lease payments. 

Entirely unlike the Agreement signed by Pochopien, the agreements in dispute in 
Jacob
 and 
Katchen
 contained provisions that were restrictive and had the effect of discouraging competition from departing partners.  In 
Jacob
, former partners sued the law firm for compensation they claimed they were owed under a service termination agreement that "provide[d] departing members with compensation above their equity interest in the firm" based upon formulas set forth in the agreement.  
Jacob
, 607 A.2d at 144.  The 
Jacob
 agreement drew a sharp distinction between competitive departures and non-competitive departures.  
Jacob
, 607 A.2d at 145.  In a competitive departure, "'the Law Firm shall have no obligation to pay and the Member shall have no right to receive 
any
 termination compensation'" (emphasis added), clearly restricting the attorneys' right to practice law in violation of New Jersey Rule 5.6.  This provision created a financial disincentive on a withdrawing attorney's retaining the firm's clients.  

Also unlike the instant Agreement, in 
Katchen
, a departing partner sought to invalidate the firm's partnership agreement, which provided that an equitable stockholder voluntarily withdrawing from the corporation will be deemed to have forfeited his equitable interest in the corporation, and will "not be required to make 
any
 payment whatsoever in regard to such forfeited equitable interest."  
Katchen
, 610 A.2d at 417 (emphasis added).  There, plaintiff "forfeit[ed] his interest in '[t]he right to receive a share of close to a million dollars worth of business that [he] originated and the firm collected when [he] left.'"  
Katchen
, 610 A.2d at 418.  The 
Katchen
 court concluded that the provision violated Rule 5.6 because it was "draconian" and "anticompetitive in the broadest sense" in that it required the plaintiff to "completely forfeit[] any interest he may have acquired by becoming an equitable stockholder simply by deciding to practice law elsewhere," patently discouraging and penalizing competitive practice by the departing attorney.  
Katchen
, 610 A.2d at 419.

Further, the Agreement signed by Pochopien contains no non-

competition provision, no restrictive covenant, no forfeiture of earnings provision, or any other similar terms, only a withdrawing partner's rights and obligations with respect to future lease payments under which Pochopien remains liable for the lease payments for only one year, regardless of whether he works for a competing firm, takes clients with him, or leaves the practice of law altogether.  Pochopien continues to share in Marshall's revenue attributable to him, which is collected after he withdraws from the firm regardless of whether, where and for whom he decides to continue to practice law. 

Nevertheless, citing 
Denburg v. Parker Chapin Flattau and Klimpl
, 82 N.Y.2d 375, 624 N.E.2d 995 (1993) (
Denburg
), Pochopien insists that at least one court has held that a law firm could not recoup its expenses for lease obligations from a withdrawing partner.  The partnership provision in 
Denburg
, however, would force a departing partner to disgorge a certain percentage of the billables at his new firm if he continued to represent clients of the former firm.  
Denburg
, 624 N.E.2d at 997.  Although the law firm viewed the provision as designed to ensure payment of the firm's lease obligation, the court struck down the provision because it was anticompetitive on its face.  The amount a partner had to pay was directly proportional to whether or not he represented former firm clients; departing partners would not be liable to their former firm if they refrained from representing any old clients, entirely distinguishable from the present Agreement.

Clearly, paragraph 8-5 of the present Agreement is facially neutral, unlike those involved in the cases upon which Pochopien relies; it has nothing to do with whether a withdrawing partner leaves to compete or not compete with Marshall.  Simply stated, withdrawing partners continue to share in the firm's revenues and also remain liable for certain expenses, such as the firm's lease obligations, and that only for a limited time.  In 
Shuttleworth, Ruloff & Giordano, P.C. v. Nutter
, 254 Va. 494, 493 S.E.2d 364 (1997), the Virginia Supreme Court found a lease provision similar to the one at issue here enforceable because the intent of the provision was not to restrict competition, but to ensure payment of the firm's lease obligations.  The same is true with regard to Agreement paragraph 8-5.  

II

Pochopien next contends that the circuit court erroneously dismissed count I of his verified complaint because the well-

pleaded facts allege that Marshall selectively enforced paragraph 8-5 against him in an anti-competitive manner in violation of Rule 5.6.  At the time of his voluntary withdrawal, Pochopien asserts that Marshall selectively waived paragraph 8-5 as applied to a voluntarily withdrawing partner who went to a corporation, but enforced the provision against Pochopien and Smith, who went to work at competing law firms.  Accordingly, paragraph 8-5, as allegedly selectively enforced by Marshall at the time of Pochopien's withdrawal, imposed a financial disincentive on him that was intended to discourage competitive activities, violating both the language and spirit of Rule 5.6.

The undisputed facts in this case establish that Marshall has not applied paragraph 8-5 in such a way as to discriminate against those withdrawing partners who subsequently compete against the firm.  Moore's affidavit reveals, however, that withdrawing partners Hogg, who left for Proctor & Gamble, Schaller, who left for divinity school, and Smith, who left for a Wisconsin law firm, each fulfilled their one-year lease payment obligations in full and Marshall assumed liability for their lease obligations thereafter.  Marshall has enforced paragraph 8-5 as to withdrawing partners whether or not they join a law firm competitor.  Marshall entered into a special arrangement with Gruber, honoring his request not to enforce the lease payment provision as to him because he was leaving the firm to become president and chief executive officer of a significant client firm and would be in a position to send Marshall additional legal work.  Significant, also, is the fact that, in turn, Marshall never assumed Gruber's future lease obligations.  Marshall's special arrangement with Gruber cannot be read so as to constitute discrimination against other withdrawing partners, who compete with the firm.  

There is no evidence that Marshall selectively enforced Agreement paragraph 8-5, and the circuit court properly so ruled.

III

As his final argument, Pochopien contends that the circuit court erred when it dismissed count II of his complaint because on one or more occasions Marshall waived enforcement of paragraph 8-5. 

Pochopien asserts that the uncontradicted pleadings and evidence before the court, namely his complaint and Marshall’s admissions, show that Marshall waived enforcement of the forfeiture provision of paragraph 8-5 against him when it made monthly payments to him on August 12 and September 12, 1997 without withdrawing or accounting for withdrawal of the 
pro
 
rata
 share of the rent for August and September 1997, and against Gruber, a former Marshall partner who voluntarily withdrew from the Marshall partnership before he did and, in doing so, created an expectation of waiver of enforcement against other voluntarily withdrawing partners, such as Pochopien.  He asserts that waiver by Marshall or its agents, whether accidental or intentional, is a question of fact and the court here allegedly erred because it failed to read all inferences in his favor.  Pochopien concludes that, on its face, Marshall's acts constituted waiver; however, when all inferences are drawn in his favor, the court erred in dismissing count II for failure to state a claim upon which relief can be granted.

The waiver of a contract provision requires the voluntary relinquishment of a known right.  
Midwest Television, Inc. v. Oloffson
, 298 Ill. App. 3d 548, 558, 699 N.E.2d 230 (1998).  If the facts necessary to support a finding of waiver are disputed, or if reasonable minds could draw different inferences from the evidence, waiver becomes a question of fact.  
Midwest Television, Inc.
, 298 Ill. App. 3d at 558. 

There is but one possible inference in this case; therefore, no question of fact exists as to whether Marshall voluntarily waived its rights.  Moore averred that Marshall did not intentionally relinquish any rights with respect to Pochopien; Hogg and Schaller fulfilled their one-year lease obligations in full and, accordingly, Marshall assumed their respective liabilities for future obligations under the lease; and although Gruber did not fulfill his one-year lease obligation, Marshall did not assume his liability for future lease payment obligations.  Even if Marshall's arrangement with Gruber could be construed as a partial waiver, under the undisputed circumstances, it would not constitute a waiver as to Pochopien.  The non-enforcement of a provision as to previous employees in different situations is insufficient to constitute waiver as to a subsequent employee (
Midwest Television, Inc.
, 298 Ill. App. 3d at 559).  

Making its first two payments to Pochopien without deducting his portion of lease obligations for the subject year shows no intent by Marshall to waive its right to enforce paragraph 8-5 as to him, since his remaining distributions were more than sufficient to cover his share of the lease obligations for that year.   

Based on the foregoing, the circuit court did not err in granting Marshall's section 2-619 motion, dismissing with prejudice Pochopien's complaint in its entirety.  For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.

FOOTNOTES
1:
Article VII, paragraph 7-2 provides, in part:

"An individual Capital Account shall be maintained for each partner to record his contributions to the capital accounts of the firm, which contributions shall be based on his participation percentage in net income for  the year in which the contributions are made.  No partner shall be entitled to receive interest on his Capital Account.  ***  No other withdrawals or contributions to capital shall be made by any partner, except in the event of withdrawal from the firm as set forth in Article VIII, or unless pursuant to the express written consent of the management committee."  

Article VIII of the Agreement to which reference is made, specifically paragraph 8-2, in part provides:

"Any partner may voluntarily withdraw from the firm upon giving to the chairman of the management committee thirty days (or such greater or lesser time as the management committee may approve on the request of the withdrawing partner) prior notice in writing of his intention to do so."

Article VIII, paragraph 8-3(i) of the Agreement provides:

"Any partner withdrawing from the firm and giving written notice as prescribed on paragraph 8-2 shall be entitled to receive:

(i) The amount of the Capital Account (as defined in paragraph 7-2, 
supra
) standing to his credit as of the end of the business day of the withdrawal date, said amount to be paid in monthly installments within one year of the date of withdrawal, or in such lesser time as  the management committee may direct.  The withdrawing partner shall be liable for any deficiency."  

Further, Article VIII, paragraph 8-5 of the Agreement ("the forfeiture provision") states in part:

"Any partner withdrawing voluntarily shall remain liable in accordance with his partnership participation percentage that existed immediately prior to his withdrawal for any continuing obligation of the firm to make payments on any lease for firm office space in effect at the time he gives written notice of withdrawal, for the remaining term of said lease, but not for more than a one (1) year period following the effective date of his withdrawal. *** Upon the expiration of said period, the partnership agrees to assume any further liability of the withdrawing partner to make such payments."

2:
Rule 5.6 of the Illinois Code of Professional Conduct provides:

"A lawyer shall not participate in offering or making:

a) a partnership or employment agreement

that restricts the rights of a lawyer to practice after termination of a relationship, except an agreement concerning benefits upon retirement; or

b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties."  134 Ill. 2d R.5.6.