NOTICE

Decision filed 04/10/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-03-0784

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| CONTINENTAL RESOURCES OF ILLINOIS, INC., | ) Appeal from the ) Circuit Court of ) Franklin County. |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) No. 02-CH-28 |
| | ) |
| ILLINOIS METHANE, LLC, and DeMIER OIL COMPANY, | ) ) |
| Defendants-Appellees, | ) ) |
| and | ) |
| | ) |
| ROYAL TALON COMPANY, | ) Honorable ) George W. Timberlake, |
| Intervening Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE DONOVAN delivered the opinion of the court:

Plaintiff, Continental Resources of Illinois, Inc. (Continental), brought an action against defendants, Illinois Methane, LLC (Illinois Methane), and DeMier Oil Company (DeMier), alleging that, pursuant to certain oil and gas leases, it has the exclusive right to explore, drill, and produce the coalbed methane gas that is being produced by defendants. Continental further alleged that it also has a legal right to share in the proceeds of Illinois Methane's coalbed methane production from certain coal mine voids because Continental owns the coal rights in nearby lands which were a part of the same coal mine. Royal Talon Company (Royal Talon) intervened, alleging that its rights might be affected by Continental's complaint. The circuit court of Franklin County dismissed Continental's complaint for a failure to state a cause of action because Continental did not have any right to produce

1

coalbed methane under the conventional oil and gas leases it controlled. The court further found that, under the mineral-production principle known as the rule of capture, the complaint did not state a cause of action for the drainage of gas. Continental appeals the dismissal of its complaint. The United Mine Workers of America, its District 12 (Illinois), and the Illinois Coal Association were given leave to file *amicus curiae* briefs with this court. We affirm.

Old Ben Coal Company (Old Ben) originally controlled the coal, oil, and gas underlying various lands in Franklin County, Illinois. In the early 1980s, Old Ben executed oil and gas leases granting the right to produce from those lands oil, all gases, liquid hydrocarbons, and their constituent products. Continental obtained three of these oil and gas leases by assignment in 2001. Continental also acquired in 2001 all oil, gas, and mineral rights to some 300 acres known as the "Williams Acreage." According to Continental, Illinois Methane and DeMier allegedly were producing coalbed methane gas from mine voids underlying the lands leased or controlled by Continental. Continental sought a declaratory judgment that it had the exclusive right to explore, drill, and produce gas, including coalbed methane gas, on these properties. Continental also sought relief under the theories of trespass, conversion, quiet title, slander of title, and accounting. It further sought injunctive relief to prevent additional production of coalbed methane gas. Royal Talon intervened with permission of the court and alleged that it owned coal rights under these lands and had leased those rights to Illinois Methane and DeMier, who were producing coalbed methane from Royal Talon coal seams. All defendants filed motions to dismiss Continental's complaint. The court granted defendants' motions after concluding that methane gas existing in abandoned mine voids left by prior coal mining operations belonged to the coal estates, that no rights to the coalbed methane gas were granted by the oil and gas leases held by Continental, and that the rule of capture applies to coalbed methane gas.

2

Continental argues on appeal that the court erred in dismissing its complaint. Continental asserts that it was error to find that the language "all gases" in its leases did not include coalbed methane gas. Continental further contends the court erred in holding that gas existing in mine voids is subject to the rule of capture.

While the ownership of and the right to develop coalbed methane gas are questions of first impression in Illinois, courts in other jurisdictions have struggled with these issues for more than a decade. A review of these cases reveals a split of authority. Many of the cases have resolved the issues by resorting to interpreting or looking to the intent of the original leases and/or grants. See *Carbon County v. Union Reserve Coal Co.*, 271 Mont. 459, 898 P.2d 680 (1995); *Newman v. RAG Wyoming Land Co.*, 53 P.3d 540 (Wyo. 2002); see also *Amoco Production Co. v. Southern Ute Indian Tribe*, 526 U.S. 865, 144 L. Ed. 2d 22, 119 S. Ct. 1719 (1999). Others have relied upon the general property laws of their respective states with respect to the production of all "minerals" and the manner in which coal is mined in that particular jurisdiction. See *NCNB Texas National Bank, N.A. v. West*, 631 So. 2d 212 (Ala. 1993); *United States Steel Corp. v. Hoge*, 503 Pa. 140, 468 A.2d 1380 (1983). No one answer is right for every state and/or every lease or grant. While cases from other states are helpful, we must make our own determinations based on Illinois law. And, in order to make those determinations, we also must consider fully the natural characteristics of coalbed methane gas and the methods, rights, and obligations of mining and extraction in general. We begin with a basic description of coalbed methane gas and the methods for its extraction.

The process by which organic material becomes coal is known as coalification. The coalification process generates gases, one of which is coalbed methane. There are three states of coalbed methane gas: (1) free gas within the cleats and matrixes of the coal, (2) gas dissolved in water in the coal pores, and (3) gas adsorbed onto the solid surface of the coal. When the pressure on the coal is reduced, the forces that hold the coalbed methane to the coal

3

are reduced and coalbed methane is released from the coal. *Harrison-Wyatt, LLC v. Ratliff*, 267 Va. 549, 551, 593 S.E.2d 234, 235 (2004).

Historically, coalbed methane gas was considered a "dangerous waste product of coal mining." *Amoco Production Co.*, 526 U.S. at 871, 144 L. Ed. 2d at 28, 119 S. Ct. at 1723. Technological developments in the 1980s and changes in federal law made the commercial development of coalbed methane gas possible. *Carbon County*, 271 Mont. at 464, 898 P.2d at 683. The extraction of coalbed methane gas is generally accomplished by one of three methods: vertical degasification wells, horizontal boreholes, or gob wells. Vertical degasification wells are drilled from the surface into an unmined coal seam. Horizontal boreholes are bored into the coal seam from a point within the coal mine itself. Gob wells, relating to longwall mining, are drilled from the surface to an area near the coal seam. *Harrison-Wyatt, LLC*, 267 Va. at 551, 593 S.E.2d at 235; *Carbon County*, 271 Mont. at 464, 898 P.2d at 683. During the longwall mining method, a machine grinds progressively into the wall of coal to tear away the coal. As the machine grinds further and further into the wall, it leaves behind it a void into which the ceiling of the mine collapses, creating a gob of rubble in which the coalbed gas collects. The collapse of the ceiling of the mine also leaves the overlying strata unsupported, and gravity causes it to subside and to fracture, thereby releasing more gas. Gas from the gob can then travel upward into noncoal strata as well. See *Carbon County*, 271 Mont. at 464-65, 898 P.2d at 683; *NCNB Texas National Bank, N.A.*, 631 So. 2d at 215.

In Illinois, mineral rights may be severed from surface rights and conveyed separately. *Miller v. Ridgley*, 2 Ill. 2d 223, 227, 117 N.E.2d 759, 761 (1954). Oil and gas in place are minerals, but because of their fugacious qualities, they are incapable of ownership distinct from the soil. They belong to the owner of the land only so long as they remain under the land, and if the owner makes a grant of them to another, it is a grant only of the gas and oil

4

that the grantee takes from the land. Oil and gas are incapable of ownership until actually found and produced. This principle is the basis for the rule of capture. *Jilek v. Chicago, Wilmington & Franklin Coal Co.*, 382 Ill. 241, 248-49, 47 N.E.2d 96, 100 (1943); *Pawnee Oil & Gas, Inc. v. County of Wayne*, 323 Ill. App. 3d 426, 428, 751 N.E.2d 1268, 1269 (2001). Under the rule of capture, gas that migrates from one property to another is subject to recovery and possession by the holder of the gas estate on the property to which the gas migrates. *NCNB Texas National Bank, N.A.*, 631 So. 2d at 224. Because coalbed gas is similar to and migrates in the same manner as other natural gas, there is no reason that the rule of capture and the laws governing the ownership of migratory natural gas should not apply to coalbed methane gas as well. *NCNB Texas National Bank, N.A.*, 631 So. 2d at 228. With these principles in mind, we turn to Continental's arguments on appeal.

Continental first alleges that oil and gas leases granting the right to produce all gases include the right to produce coalbed methane gas as well. As shown, coalbed methane gas is distinct, and the answer is not that simple. Each side has presented cogent arguments why coalbed gas should be declared the property of that particular side. Notable arguments include the fact that coalbed gas has practically the same chemical composition as natural gas with only very small percentages of other ingredients. On the other side, coalbed gas is a by-product of coal and has a natural and unique affinity for coal. The coal owner cannot mine the coal without removing the coalbed gas because it poses the perils of explosion and asphyxiation. In addition, coal owners need to control the production of coalbed gas in order to maintain the safety of the mines and the value of the coal seams.

Given the status of this case and the leases and land interests involved, we need not determine to whom the coalbed methane gas belongs in the absolute. We first note that the leases at issue here deny Continental the right to produce coalbed methane from a coal seam or void. The leases specifically require the lessee to permanently case and cement all holes

5

drilled through coal seams or mine workings. The reservation of the right to drill through the coal does not include the right to drill into the coal and develop coalbed methane. We further note that the conveyance of coal as a distinct property also includes the bundle of property rights included within the coal, such as the rights incident and necessary to the recovery of the coal. If oil and gas leases included the right to develop coalbed methane, they then would also carry an implied right to invade the coal seams and stimulate them in a fashion that could make it more dangerous or difficult to later produce the coal. *Energy Development Corp. v. Moss*, 214 W. Va. 577, 587, 591 S.E.2d 135, 145 (2003). Oil and gas producers have no direct interest in coal mine safety, and therefore coalbed methane gas historically has been completely controlled by whoever controlled the coal. We believe this to be a wise and just result. The control of coalbed methane gas should not change simply by virtue of its increased value. We further conclude that the bundle of property rights associated with the coal estate also includes the right to reduce to possession any gas trapped within the coal itself so long as the gas remains within that coal until the time of its capture. See *Vines v. McKenzie Methane Corp.*, 619 So. 2d 1305, 1308 (Ala. 1993); *United States Steel Corp.*, 503 Pa. at 147, 468 A.2d at 1383.

Continental argues that the coalbed methane found in mine voids, however, should not be treated the same as that found in coal seams or active mines. It is true that natural gas produced and reduced to possession is personal property. And gas injected into underground, defined, and controlled reservoirs belongs to whoever produced or bought the gas and transported it to those reservoirs. See, *e.g.*, *White v. New York State Natural Gas Corp.*, 190 F. Supp. 342 (W.D. Pa. 1960). Coalbed methane gas found in mine voids has never been produced or reduced to possession by someone above the ground and therefore is not personal property. The coalbed methane gas in those voids is there as a result of natural deadsorption or deabsorption from the coal formations and mine workings. Given that

6

Illinois also follows the container space doctrine, a doctrine which states that the holder of coal rights also holds the rights to the void after the coal is mined (see *Schobert v. Pittsburgh Coal & Mining Co.*, 254 Ill. 474, 98 N.E. 945 (1912)), coalbed methane gas found in the mine voids must therefore still be a part of the coal estate, subject to the rule of capture.

We therefore conclude that coalbed methane gas found in coal seams and/or in mine voids is controlled by the coal estate. Under the rule of capture, coalbed methane gas cannot be owned until it is reduced to possession. Consequently, Continental does not and cannot own the coalbed methane gas at issue here. We further conclude that defendants' production of coalbed methane gas from wells located outside Continental's lands is not a violation of Continental's rights. For these reasons, even after viewing the facts and evidence in the light most favorable to Continental, we agree with the trial court that Continental failed to state a cause of action. Clearly, there is no set of facts that can be proved under these pleadings entitling Continental to the relief it seeks. See 735 ILCS 5/2-619 (West 2000); *Pochopien v. Marshall, O'Toole, Gerstein, Murray & Borun*, 315 Ill. App. 3d 329, 335, 733 N.E.2d 401, 406 (2000). We therefore find no error in the dismissal of Continental's complaint and affirm the judgment of the circuit court of Franklin County.

Affirmed.

WELCH and McGLYNN, JJ., concur.

NO. 5-03-0784

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| CONTINENTAL RESOURCES OF ILLINOIS, INC., | ) ) ) | Appeal from the Circuit Court of Franklin County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 02-CH-28 |
| ILLINOIS METHANE, LLC, and DeMIER OIL COMPANY, | ) ) ) | |
| Defendants-Appellees, | ) ) ) | |
| and | ) ) | |
| ROYAL TALON COMPANY, | ) ) | Honorable George W. Timberlake, |
| Intervening Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed**: April 10, 2006

**Justices**: Honorable James K. Donovan, J.

Honorable Thomas M. Welch, J., and
Honorable Stephen P. McGlynn, J.,
Concur

**Attorneys for Plaintiff** Edwina Warner, Troutt, Popit and Warner, P.C., 105 North Main Street, P.O. Box 548, Benton, IL 62812; Eric S. Eissenstat, Fellers, Snider, Blankenship, Bailey & Tippens, 100 North Broadway, Suite 1700, Oklahoma City, OK 73102-8820; Allan DeVore, The DeVore Law Firm, 5709 N.W. 132nd Street, Oklahoma City, OK 73142

**Attorneys for Defendants** James L. Van Winkle, Van Winkle & Van Winkle, 301 S. Jackson Street, P.O. Box 337, McLeansboro, IL 62859-0337 (for Illinois Methane, LLC and DeMier Oil Company – Defendants-Appellees); Robert C. Wilson, Wilson & Cape, 105 South Commercial Street, P.O. Box 544, Harrisburg, IL 62946 (for Illinois Methane, LLC)

John E. Rhine, Rhine, Ernest, & Vargo, 631 Market Street, Mt. Carmel, IL 62863

(for Royal Talon Company – Intervening Defendant)

**Attorneys for** *Amicus Curiae*     L. James Hanson, Neubauer, Hanson & Overstreet, P.C., 123 South 10th Street, Suite 600, Mt. Vernon, IL 62864 (for Illinois Coal Association)

Grant Crandall, United Mine Workers of America, 8315 Lee Highway, Fairfax, VA 22031-2215; Michael Holland, Cornfield & Feldman, 25 East Washington Street, Suite 1400, Chicago, IL 60602 (for UMWA District 12, Illinois and United Mine Workers of America)